**Marilyn REED, et al., Plaintiffs,**

v.

**MOBILE COUNTY SCHOOL SYSTEM, Defendant.**

No. CIV.A. 02–0521–CB–S.

United States District Court, S.D. Alabama, Southern Division.

Feb. 13, 2003.

Francis E. Leon, Jr., Huey, Leon & Bass–Frazier, LLP, Robert S. Ramsey, Ramsey Law Firm, Mobile, AL, John B. MacNeill, MacNeill & Buffington, P.A., Flowood, MS, Alphonso Michael Espy, Mike Espy, PLLC, Jackson, MS, for Plaintiffs.

Robert C. Campbell, III, Bob Sherling, Barry Carlton Prine, Sintz, Campbell, Duke & Sherling, Mobile, AL, for Defendant.

## ORDER ON MOTION FOR CONDITIONAL CLASS CERTIFICATION

BUTLER, Chief Judge.

This matter is before the Court on the plaintiffs' motion for conditional class certification and issuance of Court-supervised notice. (Doc. 33).[1] The parties have filed briefs and evidentiary materials supporting their respective positions, (Docs. 15, 23, 26–28, 33–36, 38), as well as motions to strike various evidentiary submissions. (Docs. 37, 39).[2] The motion for conditional class certification is now ripe for resolution. After careful consideration of the foregoing materials and of all other relevant materials in the file, the Court concludes that the plaintiffs' motion for conditional class certification is due to be denied.

## BACKGROUND

This is an action for overtime compensation and liquidated damages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. The complaint was filed by Marilyn Reed and 17 other named plaintiffs on behalf of themselves and all others similarly situated, alleging that each named plaintiff worked at least 144

---

1. For reasons unknown, the plaintiffs have filed the same motion three times. (Docs. 14, 26, 33). The Court herein addresses only the final motion and any non-redundant exhibits and arguments associated with the earlier-filed motions.

2. In response to the plaintiffs' initial motion for conditional class certification, the defendant filed a motion for leave to conduct limited discovery. (Tr. 23). During telephone conferences with Magistrate Judge Steele in November 2002, defense counsel confirmed that this motion would be withdrawn by notice. (Doc. 30). As no such notice has been filed, the motion is denied as **moot** in accordance with the representation of counsel.

The plaintiffs' motion to strike, (Doc. 39), addressed to evidence irrelevant to the pending motion for conditional certification, is likewise denied as **moot**.

hours of uncompensated overtime between June 1999 and June 2002. (*Id.* at 2). The bare-bones complaint provides no information concerning any plaintiff's job title, school assignment, dates of employment, rate of pay or basis of the claim that overtime compensation is owed.

The plaintiffs' motion seeks conditional certification of an opt-in class consisting of all persons employed by the defendant in non-certified[3] positions within the three years preceding the filing of the complaint who were not paid overtime compensation earned during that period. (Doc. 33, ¶ 8 & Exhibit 4, ¶ 2; Doc. 34, ¶ 1). The plaintiffs' motion also seeks issuance of a proposed opt-in notice to members of the class. (Doc. 33, ¶ 9 & Exhibit 4).

## ANALYSIS

■ An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and *other employees similarly situated.* No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b)(emphasis added). While the FLSA thus allows the mainte-

nance of a collective action,[4] the represented employees must be "similarly situated" to the named plaintiffs. While the FLSA allows the issuance of court-supervised notice to members of the conditional class, *Hoffmann—La Roche Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), the court must first conditionally certify the class. *Hipp v. Liberty National Life Insurance Co.,* 252 F.3d 1208, 1218 (11th Cir.2001)(quoting *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1214 (5th Cir.1995)), *cert. denied,* 534 U.S. 1127, 122 S.Ct. 1064, 151 L.Ed.2d 968 (2002). Thus, both forms of relief sought by the plaintiffs in their pending motion require satisfaction of the "similarly situated" requirement.

■ The Eleventh Circuit has recommended that trial courts consider certification under Section 216(b) in two stages. At the first stage, in response to a motion to conditionally certify made prior to discovery, the court utilizes a "'fairly lenient'" standard in recognition of the limited evidence then available. At the second stage, in response to a motion to decertify made after discovery, the court makes a more informed factual determination on the similarly situated issue. *Hipp v. Liberty National,* 252 F.3d at 1218 (quoting *Mooney v. Aramco Services,* 54 F.3d at 1214). This two-tiered approach remains a "suggest[ion]," not a "require[ment]." *Id.* at 1219. Whatever approach is employed, "[t]he decision to

**3.** "Non-certified" is a term of art under Alabama education statutes, while "non-exempt" is a term of art under the FLSA. Whether or not the two are truly synonymous, the plaintiffs use them interchangeably. (Doc. 16, ¶ 5).

**4.** Perhaps because it differs in certain key respects from a class action brought under Federal Rule of Civil Procedure 23, the Supreme Court has described a representative action under Section 216(b) as a " collective action" rather than a "class action." *See*

*Kimel v. Florida Board of Regents,* 528 U.S. 62, 77, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Hoffmann—La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). The Eleventh Circuit uses the two terms interchangeably in the Section 216(b) context. *See Hipp v. Liberty National Insurance Co.,* 252 F.3d 1208, 1216–17 (11th Cir.2001), *cert. denied,* 534 U.S. 1127, 122 S.Ct. 1064, 151 L.Ed.2d 968 (2002). For convenience, this Court does likewise.

create an opt-in class under § 216(b) ... remains soundly within the discretion of the district court." *Id.*[5]

In exercising its discretion, a trial court should bear in mind that the burden is on the plaintiffs to establish the appropriateness of a collective action: "The plaintiffs bear the burden of demonstrating a *'reasonable basis'* for their claim of class-wide discrimination." *Grayson v. K Mart*, 79 F.3d 1086, 1097 (11th Cir.1996)(emphasis added)(quoting *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir.1983)); *accord Dybach v. Florida Department of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir.1991)("[T]he district court should *satisfy itself* that there are other employees of the [defendant] who desire to 'opt-in' and who are 'similarly situated'" to the plaintiffs)(emphasis added). "The plaintiffs may meet this burden, which is not heavy, by making *substantial allegations* of class-wide discrimination, that is, *detailed allegations supported by affidavits* which 'successfully engage defendants' affidavits to the contrary.'" *Grayson v. K Mart*, 79 F.3d at 1097 (emphasis added)(quoting *Sperling v. Hoffman—La Roche, Inc.*, 118 F.R.D. 392, 406–07 (D.N.J.1988), *aff'd*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).[6]

The defendant argues that there is insufficient evidence that other employees desire to opt into this action. The plaintiffs, however, have produced over 80 opt-in consent forms as required by Section 216(b). The issue, then, is whether those employees, and others within the proposed class who have not submitted consent forms, are "similarly situated" to the named plaintiffs.[7]

As noted, the plaintiffs seek conditional certification of a class consisting of all non-exempt employees of the defendant that may be owed overtime compensation. No broader class is possible in the FLSA context, and the Court rejects any suggestion that, as a matter of law, every non-exempt employee is necessarily similarly situated to every other non-exempt employee of the same employer. Were this proposition true, no evidence would ever be required to satisfy the similarly situated requirement in the FLSA context, yet the courts have made plain that such evidence is required. *E.g., Dybach v. Department of Corrections*, 942 F.2d at 1567 (a plaintiff in an FLSA case must "proffer evidence" that other employees exist that are similarly situated); *Haynes v. Singer Co.*, 696 F.2d at 885 n. 1, 887 (the trial court properly declined to issue notice to a proposed class of "all past and present employees of Singer in the State of Florida" who worked overtime without overtime compensation, absent affirmative evidence); *cf.*

---

5. The decision to send notice to conditional class members likewise is committed to the district court's discretion. *Hoffmann—La Roche v. Sperling*, 493 U.S. at 169; *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir.1983).

6. In *Grayson*, no motion to pursue a collective action or send notice to prospective class members was filed until after discovery was concluded. 79 F.3d at 1092. *Grayson*, however, relied on a lower court opinion addressing the plaintiffs' burden at the conditional certification stage, *see Sperling v. Hoffman—La Roche*, 118 F.R.D. at 406, and the requirement of detailed allegations and supporting evidence applies to pre-discovery conditional

certification. *See Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 361 (M.D.Ala.1999). The plaintiffs concede that this burden applies to them on their present motion. (Doc. 34, ¶ 12).

7. The defendant's motion to strike certain affidavits filed to show the existence of others desiring to opt in, (Doc. 37), is therefore denied as **moot**. The defendant's motion to strike certain orders entered in FLSA cases in the Northern and Southern Districts of Mississippi, (Doc. 37), is likewise denied as **moot**. *See also infra* note 12.

*Stone v. First Union Corp.*, 203 F.R.D. 532, 542 (S.D.Fla.2001)(a showing that each proposed class member in an ADEA case is age forty or over and suffered an adverse employment action is not sufficient to justify a collective action).

Judge Gold has recently synthesized the factors the Eleventh Circuit has deemed relevant to an assessment of whether the "similarly situated" requirement is satisfied in the ADEA context, including the following:

> (1) whether the plaintiffs all held the same job titles ...; (2) whether the plaintiffs worked in different geographical locations ...; (3) the extent to which the claimed discrimination occurred during different time periods and by different decision makers ...; [4] whether the plaintiffs all alleged similar, though not identical, discriminatory treatment ....

*Stone v. First Union*, 203 F.R.D. at 542–43 (citations omitted). Each of these factors weighs against conditional certification in this case.

With respect to job title, different jobs generally carry different responsibilities and often require different hours of employment, undermining the similarity between the employees. The plaintiffs' proposed class includes persons employed, inter alia, as "bus drivers, custodians, assistant teachers (a/k/a teacher's assistants), janitors, cafeteria workers, maintenance, bus barn employees, secretaries, cafeteria managers, mechanics, maids and security guards." (Doc. 33, ¶ 3).[8] This wide assortment encompasses jobs with significantly different job duties and work schedules. The plaintiffs have made no showing that they and the members of the proposed class are similarly situated

with respect to job title or the attributes encompassed within that factor.

With respect to geographical location, school systems maintain a number of campuses and may also have separate sites for administration and support services such as transportation. Different campuses necessarily possess some degree of autonomy from other campuses and even from central administration, and these campuses may in practice exercise even more autonomy than they are granted. Thus, for example, each principal may possess authority to make decisions concerning the accrual, recording and/or payment of overtime by various types of employees and may make such decisions unilaterally even absent such authority.

The plaintiffs originally insisted that the defendant "does not have the geographic argument at all" because the class "live[s] within a relatively small area." (Doc. 34, ¶ 21). The geographic issue, however, is not measured in miles but in autonomy, and the plaintiffs now concede that "each school within the [defendant] [may be] sufficiently autonomous ... that a collective action may only go forward, if at all, based around each school." (Doc. 38 at 12). The plaintiffs argue that the absence of affirmative evidence concerning autonomy weighs in their favor, (*id.*), but the burden is on the plaintiffs to make an evidentiary showing that they and the proposed class are similarly situated, not on the defendants to disprove such similarity. Given the experiential likelihood that various campuses enjoy considerable autonomy, the absence of evidence to the contrary harms rather than helps the plaintiffs' case. *Cf. Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363 (M.D.Ala.1999)(refus-

---

**8.** Even the plaintiffs appear unsure what other employees may be included in their proposed class, but the additional categories would definitely include substitute teachers and clerical employees other than secretaries. (Doc. 38, Exhibit 2 to Exhibit 1).

ing to recognize an FLSA class extending beyond the plaintiffs' restaurant absent evidence that other restaurants handled overtime compensation issues similarly). The plaintiffs have made no showing that they and members of the proposed class are similarly situated with respect to geographic location.

The third factor elaborates on the second, extending the consideration of autonomy to persons within a single location. Absent some showing that principals, supervisors and others involved in decisions involving overtime compensation operate in lockstep, the denial of overtime compensation by one decisionmaker does not readily suggest similar denials by other decisionmakers, even those operating at the same location. The plaintiffs have made no showing that they and members of the proposed class are similarly situated with respect to decisionmaker.

The fourth factor measures how closely the treatment of the plaintiffs matches that afforded the proposed class. As the plaintiffs recognize, overtime violations may be wrought by any number of means, including but not limited to the failure of the employee or employer to document the hours worked, an instruction not to record time actually worked, or a requirement that work be performed during scheduled breaks or after hours. (Doc. 38 at 12). Nevertheless, the plaintiffs do not seek to represent a class alleging any particular

manner of overtime violation but affirmatively intend to represent all employees owed overtime compensation regardless of how the failure to pay occurred. (Doc. 38 at 1). The plaintiffs have made no showing that they and members of the proposed class are similarly situated with respect to their treatment by the defendant.

In short, the plaintiffs seek to certify a collective action consisting largely if not primarily of persons performing jobs the plaintiffs have never held, who have different responsibilities and different scheduled hours from the plaintiffs and each other, who work under different supervisors than and in remote locations from the plaintiffs and each other, and who have allegedly been denied overtime compensation for reasons different than the ones applicable to the plaintiffs and each other.

▇▇▇ Faced with these glaring dissimilarities, the plaintiffs identify a single overarching similarity tying all class members together and making a collective action appropriate: they allege that the defendant has a "pattern or practice" of not paying employees earned overtime compensation. (Doc. 33, ¶ 4; Doc. 38 at 1).[9] Such a pattern or practice would satisfy the "similarly situated" requirement [10] and, given the plaintiffs' failure to make a showing of substantial similarity through other means, represents the only avenue left open to them through which to meet their

**9.** A pattern or practice theory applies only when the allegedly unlawful conduct is " 'the company's standard operating procedure—the regular rather than the unusual practice.' " *Hipp v. Liberty National,* 252 F.3d at 1227 (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). The plaintiffs employ the term "pattern or practice" as it is used in "employment cases in the civil rights area." (Doc. 29 at 1). *Hipp,* decided under the Age Discrimination in Employment Act ("ADEA"), is such a case.

**10.** A connection among various employees' claims sufficient to support permissive joinder under Federal Rule of Civil Procedure 20(a) establishes that the employees are similarly situated for purposes of Section 216(b). *Grayson v. K Mart Corp.,* 79 F.3d at 1096. Because a pattern or practice satisfies the "same transaction or occurrence" requirement of Rule 20(a), *Alexander v. Fulton County,* 207 F.3d 1303, 1323 (11th Cir.2000), it also satisfies Section 216(b).

burden of justifying a collective action.[11] The issue becomes whether the plaintiffs have presented sufficient evidence of such a pattern or practice to support the conditional certification of the proposed class.

■ The plaintiffs first cite a partial transcript from an Alabama television program in which counsel for the plaintiff appeared along with representatives of the Alabama Association of School Boards. (Doc. 33, Exhibit 1).[12] Viewed most favorably to the plaintiffs, the transcript suggests that some or all member school boards recognized some time ago that employing non-exempt persons in a dual capacity without adequate recordkeeping risked the accrual of undetected overtime and that some members may have "inadvertently run afoul" of the FLSA in this respect. The transcript does not identify any particular school system that has engaged in such conduct and affirmatively states that "[s]ome of our school systems have very good records" of compliance in this area. No legitimate inference can be drawn from the transcript that *this* defendant has ever, much less as a pattern or practice, failed to pay earned overtime

compensation to any employee, either because the employee was employed in a dual capacity without adequate recordkeeping or for any other reason.

■ The plaintiffs also rely on the affidavit of Mr. Wayne Culver, a retired investigator with the Department of Labor's Wage and Hour Division. (Doc. 29, Exhibit 1). Mr. Culver states that he has reviewed certain forms identified as "interview sheets" for employees of the defendant. (*Id.*, ¶ 3). Mr. Culver does not explain how the form was developed, what information it requests, how the information was elicited, who completed the forms, what (if any) personal knowledge of any employee is reflected in the forms, or what steps were taken to ensure that the information contained in the forms is accurate and applicable to the relevant time period. Mr. Culver does state that the form is "similar" to one used by the Department of Labor and opines that the form is "worded fairly and accurately." (*Id.*, ¶ 6).

Mr. Culver states that he has reviewed 171 interview sheets for employees of 11

---

11. According to the Eleventh Circuit, "a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b) ...." *Grayson v. K Mart*, 79 F.3d at 1095. As *Grayson* makes clear, the plaintiff in all cases bears the burden of showing substantial similarity. *Id.* at 1097. Thus, the quoted language from *Grayson* does not stand for the proposition that a unified policy, plan or scheme can *never* be required but only that it cannot be required if the plaintiffs—unlike those here—can meet their burden through other means. *See Stone v. First Union*, 203 F.R.D. at 541 (the absence of a unified policy, plan or scheme "does not mean that the criteria [of the 'similarly situated' requirement] cannot otherwise be established by other means"); *cf. Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D.Or.2002)(despite Grayson, "some identifiable facts or legal nexus must bind the claims so that hearing the cases

together promotes judicial efficiency," and "[m]ore is needed than the mere fact that all proposed members have a possible FLSA claim ...").

At any rate, this language from *Grayson* is dicta, as the plaintiffs did in fact make a showing of a unified scheme to eliminate older store managers. *See* 79 F.3d at 1097–99; *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313–14 (M.D.Ala.2002)(describing this portion of *Grayson* as dicta). Finally, the plaintiffs do not invoke the quoted language from *Grayson* in support of their motion for conditional certification.

12. The defendant has filed a motion to strike this exhibit on various evidentiary grounds. (Doc. 37). Because, as discussed in text, the exhibit is unhelpful to the plaintiffs in any event, the motion to strike is denied as **moot**. *See also* note 7, *supra*.

school systems made defendants in separate FLSA actions in this district. (Doc. 29, Exhibit 1, ¶ 3). Based on this review, he concludes that "there is good cause to suspect, based on the interview sheets, that for each defendant school district within the Southern District of Alabama a long-standing problem with overtime pay exists." (*Id.,* ¶ 8). More precisely, Mr. Culver opines that "the types of complaints made by these school employees reveal systemic, rather than individual, abuses." (*Id.,* ¶ 9). He then identifies two practices that he believes reflect a systemic problem: (1) the assignment of custodians to close up after school hours or special events; and (2) the employment of employees in the dual capacity of bus driver/substitute teacher. (*Id.*) For a number of reasons, the Court concludes that Mr. Culver's affidavit does not represent a showing of a defendant-wide pattern or practice of not paying overtime compensation sufficient to support conditional certification of the proposed class.

First, although Mr. Culver reports that he reviewed interview sheets for nine custodial employees of this defendant, he provides no evidence that all—or any—of them reflect that the employee was ever required to close up after school or special events, much less that any such occurrence happened with sufficient frequency to suggest a pattern or practice, and less still that, given the employee's work hours, such a practice would likely result in more than a 40–hour workweek. Similarly, although he reviewed interview sheets for five dual-capacity employees of this defendant, he does not provide any facts that could support an inference that the mere existence of dual-capacity employees re-

flects a pattern or practice of not paying such employees earned overtime compensation.[13]

Second, Mr. Culver has provided no information that could support an inference that the practices he bemoans, and any resulting overtime violations, exist other than in isolated physical locations within the defendant's multi-site system. Third, Mr. Culver has provided no information that could support an inference that any pattern or practice concerning custodial or dual-capacity employees infects any other job category.

In addition to these critical gaps in the plaintiffs' evidence, the Court is concerned by the manner in which Mr. Culver has developed and related his opinions. Rather than preparing a separate affidavit for each defendant and clearly limiting the basis of his opinions to interview sheets relative to that defendant, Mr. Culver has reviewed 171 interview sheets relative to 11 defendants and submitted a single affidavit that draws a single, one-size-fits-all conclusion as to all defendants. The suspicion that Mr. Culver has been unable to segregate and properly evaluate whatever evidence applicable to each defendant the interview sheets may contain is only deepened by his insistence that the Hale County school system has a "systemic" problem concerning custodial and dual-capacity employees, when his affidavit clearly reflects that he has reviewed *no* interview sheets of custodial or dual-capacity employees of that defendant.

The limited extent of Mr. Culver's review is troubling as well. A review of consent forms reveals that, as of Novem-

---

**13.** On the contrary, Mr. Culver acknowledges that using a dual employee risks uncompensated overtime only if: (1) the employee works over 40 hours between the two jobs; and (2) the employer neglects to cumulate hours between the two jobs. (Doc. 38, Exhibit 1, ¶ 9). Mr. Culver provides no evidence that *either* circumstance has *ever* existed as to this defendant, much less that *both* have *repetitively co*-existed.

ber 1, 2002, plaintiffs' counsel represented approximately 81 employees of this defendant. Even though Mr. Culver's affidavit is dated almost two months later, it reflects that he reviewed only 38 interview sheets of employees of this defendant. No explanation has been offered why plaintiffs pursuing a pattern or practice theory—and who therefore need to show that the denial of overtime compensation represents the defendant's "standard operating procedure"—would confine their expert's review to less than half of the available sample. Absent such an explanation, the strongest inference is that the majority of the sheets were withheld from Mr. Culver because they do not support the plaintiffs' theory and may not suggest the existence of overtime violations at all.[14]

The plaintiffs' response is notably tepid. They do not suggest that their evidentiary showing is persuasive; instead, they insist that their burden is "minimal." (Doc. 34, ¶¶ 12, 18). In fact, the burden on the plaintiffs is described as "not heavy,"[15] a relaxed burden but not a "minimal" one.

The plaintiffs also suggest that their evidence matches that produced in *Harper v. Lovett's Buffet*, in which the Court conditionally certified a class of all hourly employees at the defendant's Dothan restaurant. In *Harper*, however, the plaintiffs produced the affidavits of fifteen employees reflecting that the defendant had clocked out servers, cooks, hostesses, food preparation workers and busboys without their knowledge, 185 F.R.D. at 362, supporting the inference that this practice extended as well to other types of hourly employees.[16] Here, in contrast, the plain-

tiffs have produced no affidavits from employees identifying any allegedly unlawful practice, and Mr. Culver's affidavit does not support the existence of any such practice, the probable existence of any resulting overtime violations, or the defendant-wide pervasiveness of the practice or of resulting violations.

Although uncited by either party, the Court is aware of the recent ruling in *Barron v. Henry County School System*, 242 F.Supp.2d 1096 (M.D.Ala.2003), conditionally certifying a defendant-wide class based on an affidavit from Mr. Culver substantively identical to that proffered here. The *Barron* Court considered Mr. Culver's review of the interview sheets of two custodial employees of the defendant sufficient to support his conclusion that "there are systemic FLSA abuses based on a practice of requiring extra work of custodians." *Id.* at 1105. The Court apparently then extrapolated that systemic violations concerning custodians adequately evidenced systemic violations concerning all hourly employees. *See id.*

For reasons set forth previously, this Court is not persuaded to follow *Barron*. First, there has been no showing that the interview sheets reflect that any custodial employee of this defendant has been required to close up his or her school after normal working hours. Second, there has been no showing that the interview sheets reflect that any such occurrence has, or probably has, resulted in over 40 hours of work in a week by any custodial employee or that the employee was not paid result-

14. The foregoing catalogue of deficiencies with the plaintiffs' presentation, while ample to demonstrate why their motion for conditional certification cannot be granted, should not be construed as an exhaustive compilation.

15. *Hipp v. Liberty National*, 252 F.3d at 1219; *Grayson v. K Mart*, 79 F.3d at 1097.

16. The only other job categories identified by the plaintiff were those of salad bar worker, dishwasher, cashier and baker. *Id.* at 362 n. 4.

ing overtime compensation. Third, there has been no showing that the interview sheets reflect that this has happened with sufficient frequency and breadth as to suggest a pattern or practice even within the interviewee's own school, much less defendant-wide. Fourth, even a defendant-wide pattern or practice concerning custodians would not support an inference of a defendant-wide pattern or practice concerning any other job category.

As noted, the plaintiffs bear the burden of demonstrating a "reasonable basis" for their request for a defendant-wide collective action, and the Court must "satisfy itself" that the similarly situated requirement is met before conditionally certifying such a collective action. For the reasons set forth above, the Court is not satisfied that the plaintiffs have made a reasonable showing of substantial similarity between themselves and all other non-exempt employees of the defendant. Whether the plaintiffs could muster a satisfactory showing, based on affidavits from members of the proposed class, a better supported affidavit from Mr. Culver, and/or information from the defendant, is an issue not before the Court and as to which the Court has and expresses no view. The plaintiffs' motion for conditional class certification and issuance of Court-approved notice is denied.