# HOFFMANN-LA ROCHE INC. *v.* SPERLING ET AL.

No. 88–1203.   Argued October 2, 1989—Decided December 11, 1989

KENNEDY, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. SCALIA, J., filed a dissenting opinion, in which REHNQUIST, C. J., joined, *post*, p. 174.

*John A. Ridley* argued the cause for petitioner. With him on the briefs were *Richard S. Zackin* and *Harold F. Boardman, Jr.*

*Leonard N. Flamm* argued the cause for respondents. With him on the brief was *Ben H. Becker.**

---

*\*Robert E. Williams, Douglas S. McDowell,* and *Katrina Grider* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the Equal Employment Opportunity Commission by *Solicitor General Starr, Deputy Solicitor General Shapiro, Stephen L. Nightingale, Charles A. Shanor, Gwendolyn Young Reams, Vella M. Fink,* and *Gale Barron Black;* and for

JUSTICE KENNEDY delivered the opinion of the Court.

The Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U. S. C. § 621 *et seq.* (1982 ed. and Supp. V), provides that an employee may bring an action on behalf of himself and other employees similarly situated. To resolve disagreement among the Courts of Appeals,[1] we granted certiorari on the question whether a district court conducting a suit of this type may authorize and facilitate notice of the pending action. 489 U. S. 1077 (1989).

## I

Age discrimination in employment is forbidden by § 4 of the ADEA. 29 U. S. C. § 623 (1982 ed. and Supp. V). Section 7(b) of the ADEA incorporates enforcement provisions of the Fair Labor Standards Act of 1938 (FLSA), 52 Stat. 1060, as amended, 29 U. S. C. § 201 *et seq.* (1982 ed. and Supp. V), and provides that the ADEA shall be enforced using certain of the powers, remedies, and procedures of the FLSA. This controversy centers around one of the provisions the ADEA incorporates, which states, in pertinent part, that an action

"may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or

the American Association of Retired Persons by *Christopher G. Mackaronis* and *Cathy Ventrell-Monsees.*

[1] Compare *Braunstein* v. *Eastern Photographic Laboratories, Inc.,* 600 F. 2d 335, 336 (CA2 1978) *(per curiam)* (under Fair Labor Standards Act, notice permitted because of remedial nature of FLSA and because notice would avoid a multiplicity of suits), cert. denied, 441 U. S. 944 (1979); *Woods* v. *New York Life Ins. Co.,* 686 F. 2d 578, 580–581 (CA7 1982) (allowing court-approved notice); and *United States* v. *Cook,* 795 F. 2d 987, 993 (CA Fed. 1986), with *McKenna* v. *Champion International Corp.,* 747 F. 2d 1211, 1213–1217 (CA8 1984) (disapproving court-authorized notice); *Dolan* v. *Project Construction Corp.,* 725 F. 2d 1263, 1267–1269 (CA10 1984); *Partlow* v. *Jewish Orphans' Home of Southern Cal., Inc.,* 645 F. 2d 757, 758–759 (CA9 1981); and *Kinney Shoe Corp.* v. *Vorhes,* 564 F. 2d 859, 864 (CA9 1977).

themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U. S. C. § 216(b) (1982 ed.).

In 1985, petitioner Hoffman-La Roche Inc. ordered a reduction in work force and discharged or demoted some 1,200 workers. Richard Sperling, a discharged employee and one of the respondents, filed an age discrimination charge with the Equal Employment Opportunity Commission for himself and all employees similarly situated. With the assistance of counsel, Sperling and some other employees formed a group known as Roche Age Discriminatees Asking Redress (R.A.D.A.R.). The group mailed a letter, on R.A.D.A.R. letterhead, to some 600 employees whom it had identified as potential members of the protected class. The letter advised that an action would be brought against petitioner under the ADEA and invited the addressees to join the suit by filling out and returning an enclosed consent form, thus fulfilling the statutory requirement of joinder by "consent in writing."

Respondents filed this ADEA action in Federal District Court and, through R.A.D.A.R.'s letters and informal contacts, received and filed with the court over 400 consents. To ensure that all potential plaintiffs would receive notice of the suit, respondents moved for discovery of the names and addresses of all similarly situated employees. They also requested that the court send notice to all potential plaintiffs who had not yet filed consents. Petitioner opposed both motions and filed a cross-motion asking the court to invalidate the consents already filed on the ground that the solicitation had been misleading. In addition, petitioner requested that the court send out a "corrective notice" to the individuals who had filed consents.

To resolve these matters the District Court ordered petitioner to produce the names and addresses of the discharged employees. The District Court held that it was "permissible

for a court to facilitate notice of an ADEA suit to absent class members in appropriate cases, so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." 118 F. R. D. 392, 402 (NJ 1988). The court also authorized respondents to send to all employees who had not yet joined the suit a notice and a consent document, with a text and form approved by the court. The court attached the authorized notice to its interlocutory order. At the end of the approved notice was a statement that the notice had been authorized by the District Court, but that the court had taken no position on the merits of the case. *Id.*, at 417. Finally, the District Court refused to invalidate the consents already filed.

The District Court found that its orders regarding discovery and further notice met the requirements for immediate appeal, 28 U. S. C. § 1292(b) (1982 ed., Supp. V), and the Court of Appeals permitted an appeal from that portion of the ruling. The Court of Appeals affirmed the discovery order and the order for further notice, ruling that "there is no legal impediment to court-authorized notice in an appropriate case." 862 F. 2d 439, 447 (CA3 1988). The Court of Appeals declined to review the form and contents of the notice to potential plaintiffs and, in particular, it declined to pass upon the concluding statement of the notice stating that it had been authorized by the District Court.

## II

As it comes before us, this case presents the narrow question whether, in an ADEA action, district courts may play any role in prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought. We hold that district courts have discretion, in appropriate cases, to implement 29 U. S. C. § 216(b) (1982 ed.), as incorporated by 29 U. S. C. § 626(b) (1982 ed.), in ADEA actions by facilitating notice to potential plaintiffs.

The facts and circumstances of this case illustrate the propriety, if not the necessity, for court intervention in the notice process. As did the Court of Appeals, we decline to examine the terms of the notice used here, or its concluding statement indicating court authorization. We confirm the existence of the trial court's discretion, not the details of its exercise.

The District Court was correct to permit discovery of the names and addresses of the discharged employees. Without pausing to explore alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter, we find it suffices to say that the discovery was relevant to the subject matter of the action and that there were no grounds to limit the discovery under the facts and circumstances of this case.

The ADEA, through incorporation of § 216(b), expressly authorizes employees to bring collective age discrimination actions "in behalf of . . . themselves and other employees similarly situated." 29 U. S. C. § 216(b) (1982 ed.). Congress has stated its policy that ADEA plaintiffs should have the opportunity to proceed collectively. A collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.

These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. See Fed. Rule Civ. Proc. 83. It follows that, once an ADEA action is filed, the court has a

managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.

We have recognized that a trial court has a substantial interest in communications that are mailed for single actions involving multiple parties. In *Gulf Oil Co.* v. *Bernard,* 452 U. S. 89, 101 (1981), we held that a District Court erred by entering an order that in effect prohibited communications between the named plaintiffs and others in a Rule 23 class action. Observing that class actions serve important goals but also present opportunities for abuse, we noted that "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." 452 U. S., at 100. The same justifications apply in the context of an ADEA action. Although the collective form of action is designed to serve the important function of preventing age discrimination, the potential for misuse of the class device, as by misleading communications, may be countered by court-authorized notice.[2]

Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time. One of the most significant insights that skilled trial judges have gained in recent years is the wisdom and necessity for early judicial intervention in the management of litigation. Peckham, The Federal Judge as a Case Manager: The New Role in Guiding a Case from Filing to Disposition, 69 Calif. L. Rev. 770 (1981); Schwarzer, Managing Civil Litigation: The Trial Judge's Role, 61 Judicature 400 (1978). A trial court can

---

[2] We do not address any conflicts between court-authorized notice and communications with potential plaintiffs by counsel, see *Shapero* v. *Kentucky Bar Assn.,* 486 U. S. 466 (1988), as these issues are not implicated in the case before us.

better manage a major ADEA action if it ascertains the contours of the action at the outset. The court is not limited to waiting passively for objections about the manner in which the consents were obtained. By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner.

The instant case is illustrative. Petitioner objected to the form of the notice first sent by respondents' counsel, alleging that it was so inaccurate that any consents based on it should be found invalid by the court, and at the same time petitioner resisted discovery of the names and addresses of the discharged employees. Questions of notice, proper discovery, and the validity of consents were intertwined.

Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. In this case, the trial court, as part of its order, set a cutoff date for the filing of consents, as it was bound to do if the action was to proceed in diligent fashion. By approving the form of notice sent, the trial court could be assured that its cutoff date was reasonable, rather than having to set a cutoff date based on a series of unauthorized communications or even gossip that might have been misleading.

In the context of the explicit statutory direction of a single ADEA action for multiple ADEA plaintiffs, the Federal Rules of Civil Procedure provide further support for the trial court's authority to facilitate notice. Under the terms of Rule 83, courts, in any case "not provided for by rule," may "regulate their practice in any manner not inconsistent with" federal or local rules. Rule 83 endorses measures to regulate the actions of the parties to a multiparty suit. See *Gulf Oil Co.*, *supra*, at 99, n. 10. This authority is well settled, as courts traditionally have exercised considerable authority

"to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link* v. *Wabash R. Co.*, 370 U. S. 626, 630–631 (1962) (court had authority *sua sponte* to dismiss action for failure to prosecute). The interest of courts in managing collective actions in an orderly fashion is reinforced by Rule 16(b), requiring entry of a scheduling order limiting time for various pretrial steps such as joinder of additional parties. At pretrial conferences, courts are encouraged to address "the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, [or] multiple parties . . . ." Fed. Rule Civ. Proc. 16(c)(10).

We reject petitioner's contention that court involvement in the notice process would thwart Congress' intention to relieve employers from the burden of multiparty actions, as expressed in the 1947 amendments to the FLSA. In 1938, Congress gave employees and their "representatives" the right to bring actions to recover amounts due under the FLSA. No written consent requirement of joinder was specified by the statute. In enacting the Portal-to-Portal Act of 1947, Congress made certain changes in these procedures. In part responding to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, the representative action by plaintiffs not themselves possessing claims was abolished, and the requirement that an employee file a written consent was added. See 93 Cong. Rec. 538, 2182 (1947) (remarks of Sen. Donnell). The relevant amendment was for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions. Portal-to-Portal Act of 1947, ch. 52, §§ 5(a), 6, 7, 61 Stat. 87–88. Congress left intact the "similarly situated" language providing for collective actions, such as this one. The broad remedial goal of the statute should be enforced to the full extent of its terms.

Our decision does not imply that trial courts have unbridled discretion in managing ADEA actions. Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims. In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.

The judgment of the Third Circuit is affirmed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, with whom THE CHIEF JUSTICE joins, dissenting.

The Court holds that in a § 216(b) action the district court can use its compulsory process to assist counsel for the plaintiff in locating nonparties to the litigation who may have similar claims, and in obtaining their consent to his prosecution of those claims. Because I know of no source of authority for such an extraordinary exercise of the federal judicial power, I dissent.

To read the Court's opinion, one would think that what is at issue here is nothing but a routine exercise in case management. We are told that the district court has a "managerial responsibility to oversee the joinder of additional parties" in § 216(b) actions, *ante*, at 171, in order to protect potential plaintiffs and avoid duplicative litigation. We are told that all concerned—plaintiffs, defendants, and the judicial system itself—benefit when the district courts abandon their "passiv[e]" stance and instead undertake "early judicial intervention" in the process of identifying people who have a cause of action and securing their consent to join the litigation. *Ante*, at 171–172. And we are told that by doing good in this fashion the district courts merely avail themselves of their "considerable authority 'to manage their own affairs so as to

achieve the orderly and expeditious disposition of cases.'"
*Ante,* at 172–173 (quoting *Link* v. *Wabash R. Co.,* 370 U. S.
626, 630–631 (1962)).

The difficulty with sweeping these orders under the rug of
"case management" is that they were *not at all* designed to
facilitate the adjudication of any claim before the court. The
individuals whom the court helped notify were not, at the
time of the orders, part of the case. Section 216(b) provides
that "[n]o employee shall be a party plaintiff . . . unless he
gives his consent in writing to become such a party and such
consent is filed in the court in which such action is brought."
29 U. S. C. § 216(b) (1982 ed.). It is true, of course, that the
orders can be regarded as managing *future* cases—assuring,
to the extent the plaintiffs are willing, that such cases will not
be filed in different courts and at different times. But that
does not make *this* court's handling of *the case before it* any
simpler or more efficient. Surely the judge's authority to
"manage" cases has never before been thought to be more
expansive than his authority to adjudicate them—*i. e.,* to ex-
tend to cases that have not actually been filed in his court.

The activity approved today is an extraordinary applica-
tion of the federal judicial power, which is limited by Article
III of the Constitution to the adjudication of cases and con-
troversies. See, *e. g., Muskrat* v. *United States,* 219 U. S.
346, 353–363 (1911); *Gordon* v. *United States,* 117 U. S. 697,
699–706 (1864); *United States* v. *Ferreira,* 13 How. 40, 48–52
(1852); *Hayburn's Case,* 2 Dall. 409, 410, n. (1792). The
meaning of the "case or controversy" requirement was eluci-
dated by Chief Justice Marshall many years ago:

> "This clause [Art. III, § 2, cl. 1] enables the judicial de-
> partment to receive jurisdiction to the full extent of the
> constitution, laws, and treaties of the United States,
> when any question respecting them shall assume such a
> form that the judicial power is capable of acting on it.
> That power is capable of acting *only when the subject is
> submitted to it by a party who asserts his rights in the*

*form prescribed by law.* It then becomes a case. . . ."
*Osborn* v. *Bank of United States,* 9 Wheat. 738, 819
(1824) (emphasis added).

The claims facilitated or "managed" here had not yet been
submitted to the District Court. No one doubts, of course,
that Congress could give an executive agency authority to
compel disclosure of prior employees' names, so that the
agency might invite them to join an existing suit or provide
their names to counsel. But giving a *court* authority to take
action directed, not to the resolution of the dispute before it,
but to the generation and management of other disputes, is,
if not unconstitutional, at least so out of accord with age-old
practices that surely it should not be assumed unless it has
been clearly conferred. Yet one searches the Court's opin-
ion in vain for any explicit statutory command that federal
courts assume this novel role.

First, nothing in § 216(b) itself confers this power. The
portion of the statute dealing with collective employee ac-
tions provides that employees may sue in a representative ca-
pacity for other similarly situated employees who have con-
sented to the representation. The Court characterizes this
as an "affirmative permission" for representative actions,
from which it derives a "grant [of] the requisite procedural
authority to *manage the process of joining multiple parties*
. . . ." *Ante,* at 170 (emphasis added). Of course the reality
of the matter is that it is not an "affirmative permission" for
representative actions at all, but rather a *limitation* upon the
affirmative permission for representative actions that al-
ready exists in Rule 23 of the Federal Rules of Civil Proce-
dure. (That is to say, were it not for this provision of
§ 216(b) the representative action could be brought even
*without* the prior consent of similarly situated employees.)
But accepting the notion that it is an "affirmative permission"
for representative actions, I do not see how that converts
into an implied authorization for courts to undertake the
unheard-of role of midwifing those actions. I have no doubt

that courts possess certain powers over the §216(b) joinder process, most prominently the power to satisfy themselves that the employees who purportedly become parties are *in fact* similarly situated to the representative, and have *in fact* given valid consents to the litigation. That is simply part of the courts' ever-present duty to inquire into their jurisdiction over claims brought before them. But to reason from that to the existence of a more general "procedural authority to manage the process of joining multiple parties" seems to me fallacious. Nothing in §216(b) remotely confers the extraordinary authority for a court—either directly or by lending its judicial power to the efforts of a party's counsel—to *search out* potential claimants, ensure that they are accurately informed of the litigation, and inquire whether they would like to bring their claims before the court.

The Court seeks to minimize the novelty of the authority it confers by analogizing it to the authority we have earlier acknowledged for district courts to regulate communications between class members and their representatives in Rule 23 class actions, in order to ensure that the former are kept accurately informed of the litigation. See *Gulf Oil Co.* v. *Bernard*, 452 U. S. 89, 101 (1981). There is no comparison. In Rule 23 class actions, the members of a class which qualifies for certification are parties to the action and will be bound by the judgment (except for those members of a 23(b)(3) class who elect to opt out). See Fed. Rule Civ. Proc. 23(c)(3). It is not at all extraordinary for courts to supervise and regulate the participation of *existing* parties *in actions that are pending*. The Rules specifically provide, for example, that courts may, and in some instances must, notify absent class members of the pendency of the litigation. See Fed. Rule Civ. Proc. 23(c)(2) (requiring court in 23(b)(3) action to notify absent class members that they will be bound by judgment unless they opt out by a certain date); Fed. Rule Civ. Proc. 23(d) (authorizing court in 23(b)(1) or (b)(2) actions to notify class members of pendency of litigation). But what courts

may do with respect to absent parties says nothing about what they may do with respect to members of the public at large.

Nor do I agree with the Court that the Federal Rules Of Civil Procedure themselves provide the authority claimed by the District Court. To begin with, authorization from that source may be expressly foreclosed by Rule 82, which provides that the Rules "shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein." Authority for the courts to use their power for a purpose that neither achieves nor assists the resolution of claims before them appears to violate that prohibition—and the urgings of judicial efficiency are no justification for ignoring it. Cf. *Finley* v. *United States*, 490 U. S. 545, 553, n. 6 (1989) (plaintiff in Federal Tort Claims Act action against United States may not, through impleader and joinder provisions of Rules 14 and 20, bring pendent third-party claim over which there is no independent grant of federal jurisdiction); *Owen Equipment & Erection Co.* v. *Kroger*, 437 U. S. 365, 370 (1978) (Rule 14's authorization of third-party claims does not affect the statutory requirement of complete diversity among parties in diversity actions). But even if the Federal Rules could expand judicial power in this fashion, nothing in their language suggests that they have done so. The Court relies upon Rule 16, which, in authorizing pretrial conferences to facilitate the disposition of cases, admonishes the court to address "the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. Rule Civ. Proc. 16(c)(10). It would certainly be strange to confer an unusual new power by simply mentioning that power (as one of the subjects that can be considered) in a provision designed to authorize pretrial conferences. But in any case, the authority to "manage actions" cannot reasonably be read to refer to the management of claims and

parties not before the court. This is made entirely clear by the Rule's catchall provision, which admonishes the court to address "such *other* matters as may aid in the disposition *of the action.*" Fed. Rule Civ. Proc. 16(c)(11) (emphasis added).

The Court's repeated reliance upon Rule 83 is so strained that it snaps. Rule 83 states: "In all cases not provided for by rule, the district judges . . . may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act." The contention here is that this is not a "regulation of practice" *pertinent to resolution of the controversy before the court.* To respond to that contention by pointing out that the court has been given authority to "regulate practice" is not to respond at all—unless the Court means that "regulating practice" includes impositions upon the parties and their counsel for any purpose whatever.

In addition to being void because of lack of authority to act for a purpose unrelated to adjudication of the case before it, one of the court's orders, the discovery order, was invalid because the purpose for which it was issued was not a purpose permitted by Rule 26. Rule 26(b), entitled "Discovery Scope and Limits," provides:

"*Unless otherwise limited* by order of the court in accordance with these rules, the scope of discovery is as follows:

"(1) . . . Parties may obtain discovery regarding any matter, not privileged, *which is relevant to the subject matter involved in the pending action,* whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial *if the information sought appears reason-*

*ably calculated to lead to the discovery of admissible evidence.*"   (Emphasis added.)

The discovery order here had nothing to do with "the subject matter involved in the pending action," in the plainly intended sense of constituting, or "lead[ing] to the discovery of," admissible evidence.   To the contrary, it was entered by the District Court solely to "facilitate notice of an ADEA suit to absent class members," 118 F. R. D. 392, 402 (NJ 1988), and was sustained by the Third Circuit as an exercise of "the authority of the district court in an ADEA action to facilitate joinder of the putative class members," 862 F. 2d 439, 444 (1988).   Discovery for that purpose is simply not authorized. The Court notes casually that it does not "paus[e] to explore alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter." *Ante*, at 170.   I suggest that those are not "alternative bases for the discovery," but the *only* permissible bases for discovery.   And the speculation that they "might" exist will not support affirmance of an order that was squarely based on another ground.   Thus, to reach its disposition the Court not only bends traditionally understood case-or-controversy limitations but invents a discovery power beyond what the Rules confer.

In the end, the only serious justification for today's decision is that it makes for more efficient and economical adjudication of cases—not more efficient and economical adjudication of the *pending* case, but of *other* cases that might later be filed separately on behalf of plaintiffs who would have been perfectly willing to join the present suit instead.   I concede that this justification, at least, is entirely valid.   The problem is that it is a justification in policy but not in law.

If the benefits of judicial efficiency and economy constitute sufficient warrant for the District Court's action, then one can imagine numerous areas in which district courts should similarly take on the function of litigation touts—*whenever*, in fact, they have before them a claim that is similar to claims

which other identifiable individuals might possess. The Court's suggestion that ADEA suits are rendered distinctive by § 216(b)'s "explicit statutory direction of a single ADEA action for multiple ADEA plaintiffs," *ante*, at 172, is entirely unpersuasive. Section 216 no more *directs* a single action in ADEA litigation than Rule 20 (permissive joinder) *directs* a single action in all other litigation. Both provisions *permit* (in the words of Rule 20) that persons may "join in one action as plaintiffs [who] assert [a] right to relief . . . in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed. Rule Civ. Proc. 20(a).

There is more than a little historical irony in the Court's decision today. "Stirring up litigation" was once exclusively the occupation of disreputable lawyers, roundly condemned by this and all American courts. See, *e. g.*, *Peck* v. *Heurich*, 167 U. S. 624, 629–630 (1897); *Grinnell* v. *Railroad Company*, 103 U. S. 739, 744 (1881). But in the age of the "case managing" judicial bureaucracy, our perceptions have changed. Seeking out and notifying sleeping potential plaintiffs yields such economies of scale that what was once demeaned as a drain on judicial resources is now praised as a cutting-edge tool of efficient judicial administration. Perhaps it is. But that does not justify our taking it in hand when Congress has not authorized it. Even less does it justify our rush to abandon (not only without compulsion but without invitation) what the Court deprecatingly calls the courts' "passive" role in determining which claims come before them, but which I regard as one of the natural components of a system in which courts are not inquisitors of justice but arbiters of adversarial claims.

I respectfully dissent.