Khaled KASSIM, Plaintiff,

v.

The CITY OF SCHENECTADY
and Michael T. Brockbank,
Defendants.

No. 02–CV–186.

United States District Court,
N.D. New York.

April 24, 2003.

Duncan and Duncan (E. David Duncan, Esq., of counsel) Albany, NY, for plaintiff.

Friedman, Hirschen, Miller & Campito, P.C. (John L. Orfan, Esq., of counsel) Schenectady, NY, for defendants.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

#### I. BACKGROUND

On February 12, 2002, plaintiff Khaled Kassim, pursuant to 42 U.S.C. § 1983, brought suit against defendants City of Schenectady and Michael T. Brockbank, alleging that defendants' seizure of his business and property on April 23, 2001, violated the procedural due process clause of the Fourteenth Amendment of the Constitution.

After conducting a Rule 16 Conference with the attorneys on both sides, Magistrate Judge Randolph F. Treece issued a Uniform Pretrial Scheduling Order ("UPSO"), which was filed June 12, 2002. (Docket No. 6). According to the UPSO, "**THE DEADLINES SET IN THIS SCHEDULE ORDER SUPERSEDE THE DEADLINES SET FORTH IN FED. R. CIV. P. 26(a)(3) AND ARE FIRM AND WILL NOT BE EXTENDED, EVEN BY STIPULATION OF THE PARTIES, ABSENT GOOD CAUSE.**" (*Id.* at ¶ 1) (capitalization and emphasis in original). Also mandated was that discovery be completed by October 1, 2002, and that experts be identified "[n]o later than **90 days prior to the discovery deadline.**" (*Id.* at ¶ 6(a)(1)) (emphasis in original).

On August 30, 2002, Magistrate Judge Treece sent a letter to the attorneys for both sides "[i]n order to ensure that the [case] [was] proceeding in accordance with the [UPSO]." (Docket No. 7). The letter went on to state that the court "**intend[ed] to adhere to [the discovery] deadline and the other Rule 16 deadlines and w[ould] not, absent extraordinary circumstances, entertain any requests or stipulations for extensions.**" (*Id.*) (emphasis in original). Magistrate Judge Treece also reminded the parties "that the court will preclude the testimony of any experts not disclosed in accordance with the provisions of the [UPSO]." (*Id.*).

Thereafter, on September 12, 2002, September 27, 2002, and October 31, 2002, the attorneys updated Magistrate Judge Treece on the status of the lawsuit. (Docket Nos. 8, 9, and 10). Among other things, counsel for the defendants informed Magistrate Judge Treece that plaintiff's deposition had been taken on September 25, 2002. (Docket No. 9). The discovery deadline was extended to November 1, 2002.(*Id.*). Discovery was completed by October 31, 2002. (Docket No. 10). At no time in between the issuance of the UPSO and the completion of discovery did plaintiff disclose the identity of any expert he intended to use in connection with the lawsuit, or request an extension to do so.

On January 16, 2003, both defendants and plaintiff filed motions for summary judgment.

(Docket Nos. 15 and 18). After oral argument was heard on February 28, 2003, a Memorandum–Decision and Order was issued on April 3, 2003, granting plaintiff's motion for summary judgment on liability, and denying defendants' motions. *Kassim v. City of Schenectady,* 255 F.Supp.2d 32 (N.D.N.Y.2003). A trial date on damages was set for June 23, 2002. (Docket No. 28).

By letters dated April 17, 2003, and April 21, 2003, counsel for plaintiff made an application for an extension of time to retain an expert or experts and submit disclosures in connection therewith in regard to damages allegedly sustained by plaintiff. (Docket Nos. 30 and 32). Counsel for plaintiff argued that plaintiff had been out of the country for all but less than two months of the time since the seizure on April 23, 2001. Counsel argues that plaintiff's absence, coupled with his retention in Yemen of certain books written in Arabic that contain relevant financial information, have prevented him from retaining an economic loss expert(s). Counsel argues that plaintiff should be given the time to return to the United States, bringing with him the translated financial records, and "play an active role in the selection and briefing of [an] expert." (Docket No. 30).

By letters dated April 18, 2003 and April 21, 2003, counsel for defendants opposed plaintiff's application for an extension of time. (Docket Nos. 31 and 33). Counsel for defendants pointed to the deadlines in the UPSO for disclosing experts, alleged that the defendants would be highly prejudiced if plaintiff's application was granted, alleged that no documents necessary to an expert opinion were in their possession, objected to the use and translation of materials written in Arabic that they alleged were not previously disclosed, and argued that any compensatory damages should be limited to the thirty-day period during which plaintiff should have been put on notice that defendants were taking possession of the property on which plaintiff's business was located.

## II. *DISCUSSION*

Pursuant to Fed.R.Civ.P. 26(a), a party intending to call an expert witness at trial must disclose the identity of the witness, as well as the expert's report, including his or her qualifications and bases used for forming conclusions. "These disclosures shall be made at the time and in the sequence directed by the [district] court." Fed.R.Civ.P. 26(a)(2)(C). "Ha[ving] found that the interests of justice are most effectively served by adopting a systematic, differential case management system which tailors the level of individualized and case specific management to such criteria as case complexity, time required to prepare a case for trial, and availability of judicial and other resources," Local Rule 16.1 authorizes the district judge or magistrate assigned to a particular case—like Magistrate Judge Treece in this case—to issue a UPSO. Loc. R. 16.1(e).

The importance of the UPSO to a district court's effective control and management of a case, cannot be overstated. *See, e.g., Public Citizen v. Liggett Group,* 858 F.2d 775, 790 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989) ("[Scheduling] orders and their enforcement are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner. The control of these schedules is deliberately reposed in the court, and not in counsel, so that this end may be achieved"); *Potomac Electric Power Co. v. Electric Motor Supply, Inc.,* 190 F.R.D. 372, 375–76 (D.Md.1999) ("Scheduling orders are necessary tools in managing the district court's caseload as it is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars") (internal quotations and citation omitted); *Taylor v. Collins,* 574 F.Supp. 1554, 1556 (E.D.Mich.1983) ("Deadlines must be respected; without such respect, courts are unable to regulate their dockets"); *see also Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) ("The interest of courts in managing collective actions in an orderly fashion is reinforced by Rule 16(b), requiring entry of a scheduling order limiting time for various pretrial steps such as joinder of additional parties"). To be sure, "[t]he Magistrate's Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Ges-*

*tetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me.1985).

■■■ Thus, Local Rule 16.1(f), mirroring Fed. R. Civ. 16(b) as well as the UPSO in this case, mandates that any deadlines instituted therein "shall be strictly enforced and shall not be modified by the court, even upon stipulation of the parties, except upon a showing of good cause." Loc. R. 16.1(f). Whether "good cause" exists depends upon the diligence of the moving party. *See Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir.2003) (affirming district court denial of scheduling order modification where moving party delayed over year before seeking to amend pleading, discovery was finished, and a summary judgment motion was pending); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.2000). Good cause may be established if the moving party can demonstrate "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Corkrey v. Internal Revenue Service*, 192 F.R.D. 66, 67 (N.D.N.Y.2000). It may also be established by demonstrating that reasonably unforeseeable events occurring after the entry of the scheduling order precluded compliance with the deadlines in the UPSO. *Id.; Oxaal v. Internet Pictures Corp.*, 2002 WL 485704, at *1 (N.D.N.Y. Mar.27, 2002). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992); *accord Rent–A–Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 2003 WL 1894819 (S.D.N.Y. Apr.9, 2003); *Pratt v. City Mission Soc., Inc.*, 1999 WL 222568 (W.D.N.Y. Apr.12, 1999).

■■■ Here, plaintiff cannot establish the good cause necessary to allow the retention and disclosure of an expert witness. It should initially be noted that plaintiff does not simply seek the untimely disclosure of an expert who has already issued a report and is ready to be deposed. *See Lory v. General Electric Co.*, 179 F.R.D. 86 (N.D.N.Y.1998).

Rather, plaintiff seeks leave to return plaintiff to the United States, select an expert, retain an expert, issue a report, and allow defendants to depose the expert.

Plaintiff's counsel was reminded of the deadlines in the UPSO, and the court's intention to strictly adhere to them, on numerous occasions, both in the UPSO itself and in a letter sent by Magistrate Judge Treece at the halfway point of discovery. That plaintiff was out of the country for a significant amount of time during the pendency of this action provides no excuse. Plaintiff was the party that initiated this litigation. His unavailability to timely participate in the selection and briefing of an expert witness bears more on a finding of apathy than on one of good cause. *See Harris v. Computer Assoc. Intl., Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y.2001) ("If plaintiff's only availability over the past sixteen months [was] October 9, 2001, then plaintiff must not have placed any great priority on this litigation in scheduling his availability"). Sympathy is most certainly expressed at the passing of plaintiff's father in Yemen, and it is expected that plaintiff would travel to Yemen therefor, but plaintiff had no less than five or six months to return and select an expert. Indeed, plaintiff did return to the United States twice on matters relating to this litigation—for his administrative hearing and for his deposition. Those matters are, of course, of vital importance to his case, but one sees little reason why retaining an expert to calculate damages is not.

Not one extension was ever requested by plaintiff's counsel, nor was any attempt made to notify the court of the circumstances allegedly prohibiting the selection and briefing of an expert, until two weeks after summary judgment was granted on liability in favor of plaintiff. Such notification was made on April 17, 2003, five and a half months after discovery had been completed, and nearly ten months since the issuance of the UPSO. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609.

Similarly, the other reason plaintiff cites as good cause for an extension—the retention of important data by plaintiff in Yemen that was necessary to any expert's opinion—is

also rejected. Defendants claim they have not even been made aware of these documents, and plaintiff's alleged unilateral translation of the same, until now. In any event, the existence of the documents do not amount to the good cause necessary to modify the expert witness disclosure deadline in the UPSO. It is indeed difficult to square the timing of plaintiff's request for an extension with the apparent importance and significance attached to the expert's testimony.

"The disruption caused by the proliferation of untimely expert testimony is real and attorneys must know such will not be permitted." *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 312 (M.D.N.C.2002). Plaintiff has failed to demonstrate anything even remotely approaching good cause to extend the time within which to disclose an expert. Though a district court is empowered with broad discretion in determining whether to permit such extensions, the exercise of such discretion in this case is not justified and is fraught with dangers. *See, e.g., Hannah v. Roadway Exp., Inc.*, 200 F.R.D. 651, 653 (D.Colo.2001) ("If I were to ... allow the late designation [of an expert witness], of course, I would also have to allow the deposition of the late-designated expert; allow the defendants to designate their own expert, including a deposition; and allow the plaintiff an opportunity to designate a rebuttal expert, including a deposition of the rebuttal expert").

## III. *CONCLUSION*

Therefore, in accordance with the proper, fair, lawful, and agreed upon directives of Magistrate Judge Treece, (Docket Nos. 6 and 7), plaintiff's request to retain and disclose an expert witness on damages for trial must be denied. With proper foundation, plaintiff may still himself testify as to any compensatory or punitive damages, but the jury will have to hear such testimony, and choose whether to find it credible, in the absence of any expert.

Accordingly, it is

ORDERED that plaintiff Khaled Kassim's motion for an extension of time in which to confer with his attorneys, obtain further records, translate to English, brief an expert(s),

retain an expert(s), review the expert(s) report(s), disclose the expert(s) identity and report(s), depose the expert(s), and respond to disclosure of defendants' expert, if any, is DENIED.

IT IS SO ORDERED.