**Gamze ZIVALI, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,**

v.

**AT & T MOBILITY LLC, et al., Defendants.**

**No. 08 Civ. 10310(JSR).**

United States District Court, S.D. New York.

Aug. 21, 2009.

■■■■■■■■

Samuel Howard Rudman, Edward Y. Kroub, Mark Samuel Reich, Robert M. Rothman, Coughlin Stoia Geller Rudman & Robbins, LLP, Melville, NY, for Plaintiffs.

Thomas Peter Gies, Andrew W. Bagley, Betsy Alexandra Miller, Crowell & Moring LLP, Washington, DC, Gary Alexander Stahl, Crowell & Moring LLP, New York, NY, for Defendants.

Brent Edward Pelton, Pelton Serpe, LLP, New York, NY.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

On July 14, 2009, the Court issued a bottom-line Order granting plaintiffs' motion for conditional class certification pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). This Memorandum Order explains the reasoning for the Court's determination.

Defendant AT & T Mobility LLC ("Mobility") owns and operates upwards of 2,000 retail stores across the country employing over 26,000 people, a substantial percentage of which are hourly "non-exempt" employees eligible for overtime pay. *See* Ex. A to Declaration of Karen Bennett dated March 11, 2009 ("Bennett Decl.") ¶¶ 5, 7. Non-exempt employees include assistant store managers ("ASMs"), retail sales consultants ("RSCs"), and other sales or sales support positions.

Plaintiffs in this action are ASMs and RSCs moving for conditional class action certification for violations of the FLSA. They allege that defendant Mobility's timekeeping system, "MyTime," systematically failed to fully account for the hours worked by non-exempt employees, effectively forcing them to work "off the clock" and thus without due compensation. More specifically, as set forth in the plaintiffs' six supporting declarations, *see* Declaration of Brent E. Pelton dated February 20, 2009 ("Pelton Decl.") and Exs. C, D, E, F, and H attached thereto,[1] plaintiffs were variously required to: (1) review and respond to company e-mails and text messages regardless of whether they were "punched in" to MyTime;[2] (2) "punch out" of MyTime for lunch breaks despite working through them;[3] (3) open and close Mobility's retail stores off the clock;[4] and (4) participate in a variety of company-related activities outside of normal business hours (i.e., participate in conference calls, review product information and sales promotions)[5] constituting work not captured in MyTime.

---

**1.** The Court does not, however, rely on the declaration submitted by Wilma Bulka, *see* Ex. G to Pelton Decl., in making its determination since Ms. Bulka has voluntarily withdrawn her consent to be a named plaintiff in this case. *See* Ex. E to Defendant's Motion to Strike.

**2.** *See* Ex. C to Pelton Decl., Declaration of Gamze Zivali dated February 18, 2009 ("Zivali Decl.") ¶¶ 5, 7; Ex. D to Pelton Decl., Declaration of Dajuan Hunter dated February 17, 2009 ("Hunter Decl") ¶ 6; Ex. E to Pelton Decl., Declaration of Andrew Waller dated February 18, 2009 ("Waller Decl.") ¶¶ 6, 8; Ex. F to Pelton Decl., Declaration of Estee Scott dated February 18, 2009 ("Scott Decl.") ¶ 5; Ex. H to Pelton Decl., Declaration of Ashlee Weddle dated February 18, 2009 ("Weddle Decl.") ¶¶ 6, 7.

**3.** *See* Zivali Decl. ¶ 11; Hunter Decl. ¶ 7; Waller Decl. ¶ 12; Scott Decl. ¶ 6; Weddle Decl. ¶ 8.

**4.** *See* Zivali Decl. ¶ 11; Hunter Decl. ¶ 11; Waller Decl. ¶ 12; Scott Decl. ¶ 11; Weddle Decl. at 4 (unnumbered paragraph).

**5.** *See* Zivali Decl. ¶ 7; Hunter Decl. ¶ 8; Waller Decl. ¶¶ 8, 12; Scott Decl. ¶¶ 11, 12; Weddle Decl. at 4 (unnumbered paragraph).

■ Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, a collective action under the FLSA requires similarly-situated plaintiffs to "opt in" to the lawsuit by filing written consent with the court. *See Masson v. Ecolab, Inc.,* No. 04 Civ. 4488(MBM), 2005 WL 2000133, at *4–5, 2005 U.S. Dist. LEXIS 18022, at *13 (S.D.N.Y. Aug. 17, 2005). Also unlike a Rule 23 class action, an FLSA certification at this early stage in the litigation does not require a showing of numerosity, typicality, commonality and representativeness. *See Foster v. Food Emporium,* No. 99 Civ. 3860(CM), 2000 WL 1737858, at *1, 2000 U.S. Dist. LEXIS 6053, at *1 (S.D.N.Y. Apr. 26, 2000). Rather, the Court's primary responsibility is limited to determining whether the potential opt-in plaintiffs are similarly situated to the named plaintiffs. *See Chowdhury v. Duane Reade, Inc., et al.,* No. 06 Civ. 2295(GEL), 2007 WL 2873929, at *2–3, 2007 U.S. Dist. LEXIS 73853, at *7 (S.D.N.Y. Oct. 2, 2007).

■ The standard for this determination is not a particularly stringent one. Indeed, though the plaintiffs bear the burden of producing a "modest factual showing that the plaintiff and the potential plaintiffs were victims of a common policy or plan violating FLSA, it may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' 'substantial allegations' that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy." *Id.* 2007 WL 2873929, at *2, U.S. Dist. LEXIS 73853, at *7–8 (citing *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 101, 104 (S.D.N.Y.2003)) (internal quotation marks omitted); *see also Barfield v. New York City Health and Hospitals Corp.,* No. 05 Civ. 6319(JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov.18, 2005) (cit-

ing *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y.1997)); *Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303, 306 (S.D.N.Y.1998) (stating that a plaintiff can justify class certification "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law"); *Hoffmann,* 982 F.Supp. at 261 (same). However, such initial class certification under section 216(b) of the FLSA is conditional and once discovery has been completed, defendants have the opportunity to move for decertification of the class on a more complete record. *See Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819(GEL), 2006 WL 2853971, at *3, 2006 U.S. Dist. LEXIS 73090, at *3 (S.D.N.Y. Oct. 4, 2006) (only "[a]fter discovery" do courts "engage in a 'second tier' of analysis to determine on a full record—and under a more stringent standard—whether the additional plaintiffs are in fact similarly situated").

■ Plaintiffs in this case have made the modest showing necessary for such conditional certification. First, there is no question that defendant Mobility uniformly utilizes the MyTime computerized timekeeping system across all of its retail stores to record the time worked by all hourly employees. *See* Defendant AT & T Mobility, LLC's Memorandum of Law in Opposition to Plaintiff's Motion to Conditionally Certify a FLSA Collective Action and Authorize Notice to be Issued ("Def.Opp."), Ex. B attached thereto, Declaration of Terry Fogle dated March 10, 2009 ("Fogle Decl.") ¶ 3. Second, only the time reported in MyTime is paid to hourly employees like ASMs and RSCs. *See id.* ¶ 5. Therefore, any time worked "off the clock" that is not inputted into MyTime goes unpaid. Third, Mobility employees who must rely on the MyTime system to keep accurate track of hours worked can only log into the system (i.e., "punch in" or "punch out") while they are physically at a

retail store location where company terminals are available. *Id.* ¶¶ 4–5; Ex. C to Def. Opp., Declaration of Emanuelle Pallia dated March 12, 2009 ("Pallia Decl.") ¶¶ 4–5; *see also* transcript, 6/26/09. Finally, only a supervisor has override capability to retroactively adjust an employee's work hours as recorded in MyTime. *See* Fogle Decl. ¶ 9; Pallia Decl. ¶¶ 6–7.

By definition, then, MyTime cannot, at the time work is completed, accurately capture hours with respect to certain work activities. For instance, plaintiffs allege that the opening or closing of the store itself—which necessarily occurs either before an employee can "punch in" or "punch out" of MyTime—cannot be accurately recorded at the time. *See* Fogle Decl. ¶¶ 8–9; Ex. A to Def. Opp., Declaration of Karen Bennett dated March 11, 2009 ("Bennett Decl.") ¶ 21. Indeed, all activities that take place outside of the store location—like responding to company e-mails and texts on portable devices provided by the employer, or time spent servicing customers outside of the store—go uncaptured by the MyTime system.

These undisputed facts more than establish the modest showing of a factual nexus between plaintiffs' claims and other potential class plaintiffs, since non-exempt employees who are potential members of the class would also be subject to the MyTime system and its attendant policies. *See Barrus v. Dick's Sporting Goods, Inc.*, 465 F.Supp.2d 224 (W.D.N.Y.2006) (conditionally certifying a class under the FLSA where plaintiffs alleged, *inter alia,* that the Kronos timekeeping system effectively forced employees to work off the clock). Here, ASMs and RSCs that have substantively similar duties across all of defendants' retail stores, *see* Ex. K to Pelton Decl. (quoting representative job descriptions as set forth by the defendant and

noting that virtually identical postings were listed throughout the country), correspondingly face similar obstacles to accurately recording time worked in the My-Time system.

■ Defendants' argument that plaintiffs' declarations are comprised of idiosyncratic, unrepresentative, and conclusory allegations based on impermissible hearsay is of no moment. As an initial matter, the standard governing the factual basis for certification at this early stage is relatively permissive since the motion comes before discovery has commenced in earnest. *See Fasanelli v. Heartland Brewery, Inc. and Bloostein,* 516 F.Supp.2d 317, 322 (S.D.N.Y.2007) ("the initial class certification determination must be made on preliminary documents such as pleadings and affidavits, which necessarily contain unproven allegations").

Even leaving aside the fact that employees would generally become familiar through the ordinary course of employment with how the company functions and what its policies are, *see Francis v. A & E Stores, Inc.,* No. 06 Civ. 1638(CS), 2008 WL 4619858, at *3 n. 2, 2008 U.S. Dist. LEXIS 83369, at *20 n. 2 (S.D.N.Y. Oct. 16, 2008) (citing *White v. MPW Indus. Servs., Inc.,* 236 F.R.D. 363, 369 (E.D.Tenn.2006)), the factual showing underlying the Court's determination here "is not based solely on [plaintiffs'] assertions, but rather is sufficiently made out through the deposition testimony." *Francis,* 2008 WL 4619858, at *3 n. 2, 2008 U.S. Dist. LEXIS 83369, *10 n. 2. Indeed, defendant Mobility had deposed the plaintiffs in order to evaluate the underlying bases for the allegations in their declarations. *See* Exhibits to Declaration of Edward Y. Kroub dated July 2, 2009 ("Kroub Decl.") for relevant excerpts from plaintiffs' deposition transcripts.[6] Through the course of

---

**6.** Complete deposition transcripts of the

plaintiffs were originally submitted with the

the depositions, each plaintiff further substantiated his or her allegations of underpayment through additional details, while also expressing their belief (established through conversations with similarly situated colleagues) that other employees suffered the same underpayment. *See* Ex. B to Kroub Decl., Deposition of Gamze Zivali dated March 3, 2009 at 86:2–87:11 (identifying four specific individuals who were allegedly forced to work off the clock and with whom she had spoken about the issue); Ex. A to Kroub Decl., Deposition of Dajuan Hunter dated March 6, 2009 at 86:15–88:4 (identifying 23 individuals who were allegedly forced to work off the clock); Ex. C to Kroub Decl., Deposition of Andrew Waller, Jr. Dated March 9, 2009 at 53:21–57:11 (identifying 7 individuals who were allegedly forced to work off the clock); Ex. D to Kroub Decl., Deposition of Ashlee Weddle dated March 10, 2009 at 38:23–42:7 (identifying 4 specific store managers who allegedly refused to make retroactive adjustments to MyTime); Ex. E to Kroub Decl., Deposition of Estee Scott dated March 10, 2009 at 70:12–79:21 (identifying 11 individuals who were allegedly forced to work off the clock). The declarations and depositions, taken together, are more than sufficient to demonstrate the particularized personal knowledge required to make "substantial allegations" in support of class certification. *See Chowdhury*, No. 06 Civ. 2295, 2007 WL 2873929, *2–3, 2007 U.S. Dist. LEXIS 73853 at *8.

As represented by the parties, the Court's Memorandum Order resolves previously raised issues with respect to the scope and content of discovery at this stage (i.e., obtaining information necessary for proper dissemination of the opt-in no-

tice). As to the specific contents of the notice itself, the Court expects parties to work towards a mutually agreed-upon form, but will resolve remaining conflicts where necessary.[7] In the meantime, the Court directs parties to jointly call chambers by no later than August 31, 2009 to schedule any and all relevant dates with respect to the opt-in notice and notice period.

Lastly, the Clerk of the Court is hereby directed to close document number 19 on the docket of this case.

SO ORDERED.

---

plaintiffs' Reply Memorandum in Further Support of Plaintiffs' Motion to Conditionally Certify the Class. *See* Declaration of Edward Y. Kroub dated March 23, 2009 and exhibits attached thereto.

**7.** The notice should conform to the standards set forth in *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).