Douglas **AHLE**, Andrew Jordan, and William Wiseman, individually and on behalf of others similarly situated, Plaintiffs,

v.

**VERACITY RESEARCH CO., Defendant.**

**Civ. No. 09–42(ADM/RLE).**

United States District Court, D. Minnesota.

Sept. 22, 2009.

See also 641 F.Supp.2d 857

Donald H. Nichols, Nichols Kaster & Anderson, Minneapolis, MN, Matthew H. Morgan, Paul J. Lukas, Reena I. Desai, Robert L. Schug, Nichols Kaster, PLLP, Minneapolis, MN, for Plaintiffs.

Joseph M. Sokolowski, Krista A.P. Hatcher, Lindsay J. Zamzow, Fredrikson & Byron, PA, Minneapolis, MN, for Defendant.

## ORDER

RAYMOND L. ERICKSON, United States Chief Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Motion of

the Defendant Veracity Research Co. ("Veracity") for an Order Approving the Distribution of a Memorandum to Opt-in Plaintiffs. A Hearing on the Motion was conducted on September 18, 2009, at which time, the Plaintiffs appeared by Matthew H. Morgan, and Reena I. Desai, Esqs., and Veracity appeared by Joseph M. Sokolowski, Esq. For reasons which follow, we deny, as currently framed, Veracity's Motion.

II. *Factual and Procedural Background*

Veracity is a private investigative firm that specializes in insurance defense investigations. The Plaintiffs are current or former employees of Veracity, who work, or worked, as private investigators, and who claim that Veracity has violated the Fair Labor Standards Act, Title 29 U.S.C. §§ 201–219 ("FLSA"), by failing to pay them for certain hours that they had allegedly worked. Veracity denies any violation of the FLSA, and filed Counterclaims against certain of the Plaintiffs, including claims that those Plaintiffs had misappropriated confidential information, and trade secrets. In an Order dated July 28, 2009, the District Court, the Honorable Ann D. Montgomery presiding, granted the Plaintiffs' Motion to Dismiss Veracity's claims, on jurisdictional grounds, that those Plaintiffs had misappropriated Veracity's confidential information, and trade secrets. See, *Memorandum Opinion and Order*, 641 F.Supp.2d 857 (D.Minn.2009).

Veracity now seeks leave of the Court to distribute the following memorandum to those of its employees who elect to opt-into this collective action:

> We understand that you recently elected to become a party plaintiff in this wage and hour lawsuit. We respect your decision and assure you that you will not be retaliated against in any way by [Veracity] because of your involvement in this case.

> However, we want to remind you that, like all [Veracity] employees, you have a duty not to share or disclose any of our trade secrets or other confidential information outside of the Company except as authorized by [Veracity]. This includes any company property, whether in tangible or electronic form. Although we have no desire to interfere with your participation in this lawsuit, it does not relieve you of your obligations as a [Veracity] employee, including to protect our trade secrets and other confidential information.

> Please let me know if you have any questions concerning this Memorandum or our policies prohibiting the nondisclosure and nonmisappropriation of [Veracity's] confidential information and property, as reflected in our Employee Manual and your Agreement with [Veracity].

*Affidavit of Joseph M. Sokolowski ("Sokolowski Aff."), Exhibit A, Docket No. 90–1*, at p. 2 of 6.

Before distributing the memorandum to opt-ins, counsel for Veracity requested permission to do so from counsel for the Plaintiffs, who objected to the distribution, and urged that Veracity seek Court approval.

Without the knowledge of its counsel, on August 6, 2009, Veracity sent a copy of the memorandum, authored by Veracity's Chief Executive Officer, to a current employee who had opted into the lawsuit, and followed that transmission with a personal email to the employee which directed that he confirm that he received, understood, and would comply, with the terms of that memorandum. According to the Plaintiffs, Veracity sent the memorandum to that employee "within 20 minutes" of the employee's election to opt-into the case. See, *Plaintiffs' Memorandum in Opposition, Docket No 93 ("Pl's Memo."),* at p. 4 of 8;

see also, *Sokolowski Aff.*, supra at p. 4 of 6. After counsel for the Plaintiffs reiterated their opposition to the distribution of the memorandum, Veracity filed their Motion for Court approval to do so.

Veracity contends that the memorandum is "neither threatening, coercive, nor misleading, and Plaintiffs fail to explain why they object to it," see, *Veracity's Memorandum in Support, Docket No. 89 ("Veracity's Memo.")*, at p. 1 of 6, and believes that, as the employer of those opt-ins who are current employees, Veracity is doing no more than reminding those employees of their obligation to maintain the secrecy of Veracity's confidential information, and trade secrets. *Id.* at p. 1–2 of 6 ("The memo, which [Veracity] believed to be appropriate and benign, was intended to remind employees of their obligation not to disclose trade secrets or other confidential information."). Accordingly, Veracity requests an Order that permits "it to distribute the memorandum to any future opt-in plaintiffs who are current employees of [Veracity] at the time they opt in to the lawsuit." *Id.*

In turn, the Plaintiffs contend that the memorandum "serves no legitimate business purpose, and is little more than a poorly-disguised attempt to discourage Veracity's current employees from asserting their rights under the Fair Labor Standards Act," and "improperly seeks to prevent open lines of communication between Plaintiffs and their counsel." *Pl's Memo*, supra at p. 1 of 8.

### III. *Discussion*

██ A. *Standard of Review.* "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). "But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules." *Id.*, citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). "Before entry of such an order, there must be a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Great Rivers Cooperative of Southeastern Iowa v. Farmland Industries, Inc.*, 59 F.3d 764, 766 (8th Cir.1995), citing *Gulf Oil Co. v. Bernard*, supra at 101, 101 S.Ct. 2193.

██ "In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.*, quoting *Gulf Oil Co. v. Bernard*, at 102, 101 S.Ct. 2193. "Nevertheless, a limited restriction—such as precluding a defendant from soliciting class members to opt out of the litigation—will sometimes be justified." *Id.*, quoting *Manual for Complex Litigation, Second*, at § 30.24 at p. 232, citing, in turn, *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985). While the foregoing authorities specifically address class action proceedings, the same principles have been extended to collective actions, such as this one. See, *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). In *Hoffmann–La Roche*, the Court specifically recognized that the benefits of the collective form of litigation "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170, 110 S.Ct. 482.

B. *Legal Analysis.* We do not suggest that there is anything misleading in the contents of Veracity's proposed memoran-

dum. Rather, we have concern that the memorandum, which will only be sent to Veracity's current employees who opt-into the collective action, will unnecessarily highlight Veracity's close attention to that employee's election to participate in this proceeding. Perhaps, in and of itself, such a highlighting could prove to be innocent, we find no logical nexus between joining this collective action, and any derivative motivation to impermissibly share Veracity's confidential information, or trade secrets. Instead, we are left with the distinct impression that the transmission of the memorandum—only to opt-ins—is intended to not-so-subtly influence the opt-in, as to his choice to engage in this lawsuit, by assuring him or her that Veracity's management will be more closely scrutinizing that employee's demeanor and conduct, than other similarly-situated employees who have not joined the suit.

The opt-ins do no wrong in joining this collective action; they are simply exercising their rights under a statute that Congress enacted to assure that they were fairly compensated for the hours that they worked for Veracity, or for any other employer. If that joinder warrants a cautionary, that the opt-in should not seek to steal Veracity's property, whether tangible or electronic, the connection escapes us. Nor are we able to clearly understand Veracity's asserted business purpose for the advisory. While we certainly accept that Veracity is engaged in a sensitive business, and could be exposed to penalties if the information its investigators gather is improperly disclosed in such a way as to violate State or Federal statutes, or Veracity's contracts with third-parties, we are unable to perceive why joining this lawsuit

potentiates toward any such violations. Veracity, and the Plaintiffs, have entered a Protective Order that preserves the confidentiality of information that has been so labeled by one party or the other. Counsel for the Plaintiffs need not request, even if they were so unprofessionally motivated to do so, information from the opt-ins which is otherwise available from Veracity.[1]

Nor is it clear what Veracity characterizes as confidential, or as a trade secret. Surely that characterization could not encompass evidence, if any there be, that Veracity's policies and practices violate the provisions of the FLSA, and yet, that inference may not be fully understood by the opt-ins who are warned not to communicate some undefined information to persons outside of Veracity. The Confidentiality Agreements between Veracity, and its investigators, have not been presented for our review, but we have grave difficulty in conceiving why "information about other employees" could be considered confidential. See, *Veracity's Memo.*, supra at p. 5 of 6 ("[Veracity's] employees have access to confidential information and trade secrets, including clients lists and information about other employees."). While the confidences of Veracity's client lists would surely be proprietary, we are unable to fathom why that information would be a subject of inquiry, by the Plaintiffs' counsel, in an FLSA action.

■ In our considered view, Veracity's memorandum unfairly chills the opt-ins' Sixth Amendment right of access to the Courts, as well as their entitlement to consult with legal counsel, concerning their

---

1. According to Veracity, it "seeks to send the memorandum only to current employees who opt-in because those are the individuals who have the greatest access to [Veracity's] confidential information and trade secrets." *Veracity's Memo.*, supra at p. 5 of 6. Notwithstanding our questioning of defense counsel as to the meaning of this statement, we can glean no availability to the opt-in, as opposed to any other similarly-situated non-opt-in, of Veracity's confidences, or trade secrets.

FLSA claims, without fear of retribution arising from some notion that the information that they are disclosing will subject them to discipline, or other legal action, predicated upon a breach of a Confidentiality Agreement. Moreover, we are unable to perceive any reason for the opt-ins to be disclosing information that would compromise a confidence, or a trade secret. As we have noted, the issues raised in this action pertain to wages, and hours worked; they do not involve matters of confidence or trade secret, and Veracity has failed to explain why it should fear such disclosures, much less why it believes that counsel for the Plaintiffs would be interested in any such information.[2]

Given these considerations, and the entirety of the Record that the parties have presented for our consideration, we find that Veracity should be allowed to exercise its free speech right to communicate with its employees on matters as significant as the preservation of confidential information, and trade secrets. In order to preserve that right, without trammeling upon the opt-in's right of access to the Courts, any communication from Veracity, on this subject, should be transmitted to all of its employees, who signed a Confidentiality Agreement, and not just to the opt-ins. In this fashion, the rights of both sides are appropriately weighed and protected. While our ruling will require that the memorandum be modestly reworded, if Veracity truly has a concern that its employees, or some subclass of them, will improperly disclose its trade secrets, or confidential information, then a cautionary advisory to its workforce will further its

interest in preserving the integrity of such information, without sacrificing the opt-ins' rights under the FLSA. As we did at the Hearing, we suggest that the memorandum be generic in form and content, and not be connected to this litigation. If a suitable memorandum evades the parties, they may jointly contact this Court for assistance.

NOW, THEREFORE, It is—

ORDERED:

That the Defendant's Motion for an Order Approving the Distribution of a Memorandum to Opt-ins [Docket No. 87] is DENIED, as currently framed.

---

**2.** To the extent that Veracity argues that the opt-ins are more likely to divulge confidential information, because they will be questioned by the Plaintiffs' counsel, we would only note that, for reasons we detailed in *Paulson v. Plainfield Trucking, Inc.,* 210 F.R.D. 654, 657–58 (D.Minn.2002), counsel for the Plaintiffs may be able to question other current employ-

ees of Veracity without running afoul of their ethical obligations. Given that potentiality, we are unable to distinguish the circumstances that Veracity offers as warranting special treatment of opt-ins, from those that may well apply to other current employees who have not elected to opt-into this action.