[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 13-12561

D.C. Docket No. 4:12-cv-00627-KOB

MARY BILLINGSLEY,
on behalf of herself and all others similarly situated,
FANNIE THRASH,
on behalf of herself and all others similarly situated,

Plaintiffs-Appellees,

versus

CITI TRENDS, INC.,

Defendant-Appellant.

Appeal from the United States District Court for
the Northern District of Alabama

March 25, 2014

Before HULL, Circuit Judge, and Goldberg,* Judge, and Smith,** District Judge.

---

* Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

** Honorable C. Lynwood Smith, Jr., United States District Judge for the Northern District of Alabama, sitting by designation.

HULL, Circuit Judge:

Plaintiffs-appellees Mary Billingsley and Fannie Thrash (collectively, "Billingsley") filed a putative collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., against defendant-appellant Citi Trends, Inc. ("Citi Trends").  Citi Trends moved to compel arbitration based on the terms of an arbitration agreement executed after the filing of the action but before the district court certified the FLSA collective action.

The district court denied Citi Trends's motion to compel arbitration, and Citi Trends appeals.  After review of the record and the briefs of the parties, and having the benefit of oral argument, we affirm.

## I.  BACKGROUND

### A.    Complaint

Citi Trends is a retail clothing store.  Billingsley is a store manager at Citi Trends.

On February 23, 2012, Billingsley filed a putative collective action against Citi Trends.  In the complaint, Billingsley alleges that Citi Trends violated the FLSA by improperly designating its store managers as exempt employees and failing to compensate them for their overtime hours.

2

As allowed by the FLSA, Billingsley filed her putative collective action on behalf of herself and other similarly-situated Citi Trends's store managers. See 29 U.S.C. § 216(b). The complaint urged the district court to issue notice or allow Billingsley to send notice to all similarly-situated store managers.

## B.    Planning Conferences and Order

The parties participated in a Rule 26(f)[1] conference. And, on May 15, 2012, the parties filed a joint Rule 26(f) planning report. In that report, the parties proposed a schedule and process for pursuing conditional FLSA collective action certification and issuing notice to similarly-situated store managers.

As a general matter, the parties proposed following the conditional collective action certification process endorsed by this Court in Hipp v. Liberty National Life Insurance Co., 252 F.3d 1208, 1219 (11th Cir. 2001).[2] Consistent with the Hipp-endorsed process, the parties proposed that Billingsley would move the district court for an order permitting court-supervised notice of the similarly-situated store

---

[1]Unless otherwise stated, "Rule" refers to the Federal Rules of Civil Procedure.

[2]The Eleventh Circuit has endorsed a two-tiered approach to determining notification and certification of opt-in collective actions under 29 U.S.C. § 216(b), which allows the district court to address, at two different stages, the question of whether plaintiffs are "similarly situated" for the purposes of the FLSA. Hipp, 252 F.3d at 1218-19. The first determination is made at the so-called "notice" or "conditional certification" stage, where the district court makes a decision—usually based only on the pleadings and affidavits which have been submitted—whether notice of the action should be given to potential collective action members. Id. at 1218. If the district court "conditionally certifies" the collective action, putative collective action members are given notice and the opportunity to "opt-in." Id. at 1218.

3

managers' FLSA opt-in rights within 60 days of the district court's issuance of a scheduling order. The parties proposed a 30-day timeframe for Citi Trends to respond to Billingsley's motion and a 7-day window for Billingsley to reply.

On May 31, 2012, the district court held a scheduling conference with the parties. Based on the joint scheduling conference, on June 14, 2012, the district court entered a preliminary scheduling order pursuant to Rule 16(b). In its order, the district court provided the briefing schedule for conditional collective action certification and court-ordered notice of the action.

## C.    Motion for Conditional Certification

On August 7, 2012, Billingsley filed a Motion for Conditional Certification and Court Approved Issuance of Notice. Billingsley supported her motion with briefing and evidentiary materials.

On October 17, 2012, after receiving two extensions of time, Citi Trends responded in opposition to Billingsley's motion for conditional certification. To support its response, Citi Trends filed evidentiary materials, which included (1) fill-in-the-blank declarations and (2) arbitration agreements executed by several dozen store managers (i.e., potential members of the collective action). Citi Trends's opposition brief informed the district court that—if the court certified the

4

FLSA collective action—the store managers who had executed the arbitration agreements would be subject to arbitration and unable to join the collective action.[3]

As discussed in detail below, Citi Trends gathered the declarations and arbitration agreements after the district court set forth the schedule and procedures for Billingsley's motion for conditional certification and notice.  Citi Trends gathered these documents through back-room meetings that were "highly coercive" and "interrogation-like."

**D.    Motion to Strike and Motion for Entry of Protective Order**

On October 31, 2012, based on Citi Trends's conduct in obtaining the declarations and arbitration agreements from potential collective action members, Billingsley asked the district court for three corrective actions.  First, Billingsley filed a motion to strike the store managers' declarations.  Second, Billingsley sought a protective order that would prohibit Citi Trends or its agents "from communicating with any plaintiff, opt-in plaintiff or potential collective class member regarding matters related to this litigation in a[n] intimidating, misleading or coercive manner."  Third, Billingsley asked the district court to "issue a corrective letter or include such corrections in an order granting court supervised

---

[3]On November 19, 2012, the first putative collective action member subject to an arbitration agreement joined this action. A month later, two additional collective action members subject to the arbitration agreement joined the action.

5

notice to potential plaintiffs of their opt-in rights correcting the effects of [Citi Trends's] conduct."

After briefing by both parties, the district court denied Billingsley's motion to strike and motion for a protective order.  The district court deferred ruling on Billingsley's request for corrective action until the district court issued a ruling on Billingsley's motion for conditional collective action certification.

### E.    Ruling on Conditional Certification and Corrective Action

On January 14, 2013, the district court held a hearing on Billingsley's motion for conditional certification.

Based on affidavits from several opt-in plaintiffs and the lenient standard for conditional certification in a FLSA collective action, the district court granted Billingsley's (1) motion for conditional certification of the collective action and (2) motion to send court-approved notice to potential opt-in plaintiffs.[4]

The district court then turned to the issue deferred in its earlier order: Billingsley's motion for corrective action.  Pertaining to the request for corrective action, the district court found that—after the parties' May 31, 2012 status conference and before Billingsley's deadline to move for conditional certification and notice—"Citi Trends initiated company-wide in-person meetings between two

---

[4]The district court approved the text of the notice at a later date.

6

corporate representatives and its [store managers], who are potential collective class members" but not presently parties to the lawsuit.  The district court found that, at these meetings and at Citi Trends's direction, almost every store manager completed a fill-in-the-blank declaration about her job duties and signed an arbitration agreement that bound the store manager to arbitrate any claims she had against Citi Trends.

Based on its "responsibility to see that an employer not engage in coercion or duress to decrease the size of a collective class and defeat the purpose of the collective action mechanism of the FLSA," the district court granted, in part, Billingsley's motion for corrective action.  Specifically, the district court ordered that its supervised notice state that any potential plaintiff who felt that she signed the mandatory arbitration agreement under duress was allowed to opt-in to the collective action notwithstanding her agreement to the contrary.  Based on this decision, the court stated that Citi Trends could not move to compel arbitration for those store managers who might elect to opt-in to the action, even if those managers had signed the arbitration agreement.

## F.    Motion for Reconsideration and Motion to Compel Arbitration

Defendant Citi Trends requested reconsideration of the district court's order allowing putative plaintiffs to opt-in to the FLSA collective action notwithstanding

the terms of the arbitration agreement.  Citi Trends simultaneously moved to compel arbitration.

After briefing by the parties, the district court granted Citi Trends's motion for reconsideration and scheduled an evidentiary hearing on Citi Trends's motion to compel arbitration.  The court stated that the hearing was intended to elicit "evidence surrounding the potential opt-in plaintiffs' signing of the mandatory arbitration agreements to determine if any coercion, duress, or intimidation occurred."

After a two-day evidentiary hearing, which included live testimony, the district court orally denied Citi Trends's motion to compel arbitration.  The district court followed its oral order with a written order denying Citi Trends's motion to compel arbitration.

## G.    District Court's Findings of Fact

To support its order denying Citi Trends's motion to compel arbitration, the district court made the following findings of fact:

Citi Trends devised and implemented a new alternative dispute resolution ("ADR") policy in the late spring and early summer of 2012—after it was served with the complaint in this action on February 27, 2012, and after the district court set a scheduling conference for May 31, 2012.  Weeks after the district court's

8

May 31, 2012 scheduling order,[5] Citi Trends began to roll out its new ADR policy. The ADR policy included a mandatory agreement to arbitrate all disputes individually rather than collectively.

By June 30, 2012, Citi Trends sent its human resource representatives to meet with store managers to roll out the new ADR policy—but only to putative collective action members (i.e., store managers). Throughout the summer, Citi Trends's human resource representatives met individually with all store managers across the country. Citi Trends had two employees in each ADR meeting: a human resources representative and a "witness."

The human resources representative who met with the store managers advised Citi Trends in its employment decisions. Thus, the store managers reasonably believed the human resources representative had authority to make or influence employment decisions, including hiring and firing decisions.

Store managers were ordered to attend the ADR meetings by their supervisors. Citi Trends did not inform the store managers of the true purpose of the mandatory meetings. Instead of telling the store managers that the meetings

---

[5]The scheduling order required Billingsley to file a motion for conditional certification of the collective action by July 31, 2012 with briefing to be completed by September 10, 2012.

9

concerned the company's new ADR policy, Citi Trends told the store managers that the mandatory meetings concerned the issuance of a new employee handbook.

Typically, Citi Trends rolled out its new employee handbook in a group setting. The handbook was generally provided in printed form (i.e., not as a photocopy), and the employees were required to sign for the handbook. Here, however, Citi Trends did not follow any of its general procedures for rolling out the employee handbook. Instead, Citi Trends (1) held two-on-one private meetings with each store manager in a small, back room in Citi Trends retail stores—the same places where the store interrogated or investigated its employees, (2) discussed only the ADR policy and the fill-in-the-blank declarations related to the store managers' job duties, (3) provided photocopied versions of the employee handbooks as the store managers left the meetings, and (4) did not require the store managers to sign for the photocopied employee handbook.[6] The district court found that this rushed and atypical rollout of the employee handbook demonstrated that Citi Trends's handbook rollout was "pretext for presenting the [arbitration] Agreement to the [store managers] to derail their participation in this lawsuit."

---

[6]Eventually, the store managers (and all other Citi Trends employees) received, and signed for, printed versions of the employee handbooks in the usual way.

10

When a store manager arrived at the back-room meetings, a human resources representative greeted the store manager.  A second individual was also at each meeting; however, this person was not introduced to, or known by, the store managers.

At the meetings, Citi Trends's human resources representative gave the store managers these documents:  the arbitration agreement, a fill-in-the-blank declaration, and the store manager disclosure.  The store managers were asked to sign each of these documents at the meeting.

Citi Trends informed the store managers that the arbitration agreement was a condition of continued employment.  The store managers understood that they would be fired if they did not assent to the arbitration agreement or the new ADR policy.[7]  Thus, the store managers lacked meaningful choice in whether to sign the arbitration agreements or other documents.  The district court found the setting of the back-room meetings to be a "highly coercive" and "interrogation-like."

Opt-in plaintiffs testified that they signed the documents but felt intimidated by the human resources representative.  They also felt pressured to sign the

---

[7]As it turns out, Citi Trends intended to defer employment decisions related to a store manager's refusal to sign the arbitration agreement until after this lawsuit concludes.  However, Citi Trends did not inform the store managers that immediate termination would not occur if they declined to sign the arbitration agreement.

11

arbitration agreements to avoid losing their jobs.  Even when specifically requested, Citi Trends did not give the store managers copies of the documents that the store managers signed.

The district court found that Citi Trends did not conceive or begin to institute its ADR policy until after the district court held a scheduling conference to determine when and how Billingsley must move for conditional certification.  Citi Trends then rolled out its ADR policy in a "blitzkrieg fashion" and only required potential members of this collective action to agree to the ADR policy.  The district court found that Citi Trend's "ADR roll-out was a hurried reaction specifically targeted at curtailing this litigation."

The district court found that the "purpose and effect" of the arbitration agreement was "to protect Citi Trends in this lawsuit."  The district court also found that the timing of the arbitration agreement's rollout "was calculated to reduce or eliminate the number of collective action opt-in Plaintiffs in this case" and the rollout was "replete with deceit" and "designed to be[] intimidating and coercive."

## H.    District Court's Conclusions of Law

Based on its findings of fact, the district court concluded that the arbitration agreements were unconscionable as a matter of law.  Because the arbitration

12

agreements were unconscionable, the district court denied Citi Trends's motion to compel arbitration against the opt-in plaintiffs who had signed the arbitration agreements.

The district court also denied Citi Trends's motion to compel arbitration against the opt-in plaintiffs for an alternative reason. The court found that there was "a record of abuse on the part of Citi Trends in targeting potential class members and procuring the signatures of its [store managers] on the [arbitration] Agreements." As such, the district court exercised its managerial responsibility to oversee party joinder in FLSA collective actions and determined that—to correct the effect of Citi Trends's misconduct—it would not enforce the arbitration agreements against any opt-in plaintiffs who signed the agreement under Citi Trends's coercive ADR rollout process in the summer of 2012.

## I.    Court-Approved Notice

After the district court conditionally certified the collective action and denied Citi Trends's motion to compel arbitration, the parties proposed the text of the notice that would be mailed to potential collective action plaintiffs. The proposed notice described the action, notified store managers of their right to join the action, informed store managers that they could join the lawsuit even if they

13

had signed the arbitration agreement during the summer of 2012, and described the procedure for joining the action.

The district court approved parties' proposed notice.

## J.    Instant Appeal

Defendant Citi Trends timely appealed from the district court's order denying Citi Trends's motion to compel arbitration.  See 9 U.S.C. § 16 (permitting interlocutory appeal from an order denying a motion to compel arbitration).

The district court stayed the proceeding below pending resolution of this appeal.  The stay went into effect after the notice and joinder (i.e., opt-in) period ended.

## II.  DISCUSSION

The district court provided alternative reasons for its decision to deny Citi Trends's motion to compel arbitration.  We begin with the district court's decision to deny Citi Trends's motion to compel arbitration based on the district court's responsibility to oversee party joinder in FLSA actions.[8]

---

[8]We review this portion of the district court's order for abuse of discretion.  See Gulf Oil Co. v. Bernard, 452 U.S. 89, 103, 101 S. Ct. 2193, 2201 (1981).

14

## A.    FLSA

Congress passed the FLSA to protect workers from overbearing practices of employers who had greatly unequal bargaining power over their workers.  See Roland Elec. Co. v. Walling, 326 U.S. 657, 668 n.5, 66 S. Ct. 413, 418 n.5 (1946). Congress has expressed a policy that FLSA plaintiffs should have the opportunity to proceed collectively.  See 29 U.S.C. § 216(b); Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 173, 110 S. Ct. 482, 488 (1989) (discussing the FLSA's "broad remedial goal").[9]  To join the FLSA collective action, each party plaintiff must consent in writing to become a plaintiff in the case.  29 U.S.C. § 216(b).  This is referred to as opting-in to the action.[10]

The FLSA's collective action mechanism (1) reduces the burden on low wage employees through the pooling of resources and (2) allows for the efficient resolution of common issues of law and fact that arise from the same illegal conduct.  Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1264–65 (11th Cir. 2008); see also Hoffmann–La Roche, 493 U.S. at 170, 110 S. Ct. at 486 (noting a

---

[9]Hoffmann–La Roche involved a suit brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").  493 U.S. at 167, 110 S. Ct. at 484. Section 7(b) of the ADEA incorporates the enforcement provisions of the Fair Labor Standards Act, including 29 U.S.C. § 216(b).  29 U.S.C. § 626(b).

[10]The requirement that potential plaintiffs "opt-in" to the collective action is a primary feature that distinguishes FLSA collective actions from class actions that are subject to Rule 23. Indeed, unlike the FLSA, Rule 23 requires putative class members to "opt out" if they do not wish to be bound by the outcome of the class action.  See Fed. R. Civ. P. 23(c)(2)(B).

15

collective action affords plaintiffs the "advantage of lower individual costs to vindicate rights by the pooling of resources" and "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact").

## B.    District Court's Managerial Responsibility

Although collective and class actions "serve an important function in our system of civil justice," collective and class actions present "opportunities for abuse as well as problems for courts and counsel in the management of cases." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99–100, 101 S. Ct. 2193, 2199–2200 (1981) (discussing Rule 23 class actions); see Hoffmann–La Roche, 493 U.S. at 171, 110 S. Ct. at 486–87 (extending reasoning of Gulf Oil to collective actions).

In particular, the benefits of the FLSA's collection action mechanism "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id. at 170, 110 S. Ct. at 486.  Because formal notice to putative FLSA collective members is provided after conditional certification has been approved by the district court, pre-certification, ex parte communication with putative FLSA collective members about the case has an inherent risk of prejudice and opportunities for impropriety.

16

To avoid such prejudice and impropriety and to ensure the potential plaintiffs have a fair opportunity to opt-in to a FLSA collective action, the district court has the discretion to "facilitat[e] notice to potential plaintiffs" and "broad authority" to exercise control over the collective action and to govern the conduct of counsel and parties in the collective action.  See Gulf Oil, 452 U.S. at 100, 101 S. Ct. at 2200 (class actions); see also Hoffmann–La Roche, 493 U.S. at 169–71, 110 S. Ct. at 486 (affirming the power of district courts to exercise control over collective actions); Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1200 (11th Cir.1985) (noting the district court's "preeminent role in managing the notification process").

A district court's authority to control counsels' conduct in a § 216(b) collective action includes the authority to prevent confusion and unfairness concerning an FLSA collective action.  See Hoffmann-La Roche, 493 U.S. at 169–71, 110 S. Ct. at 486.  It also includes "authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."  Id. at 170, 110 S. Ct. at 486 (citing Fed. R. Civ. P. 83).

Indeed, because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, "the court has a

17

managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." See id. at 170–71, 110 S. Ct. at 486. The district court also has the responsibility to insure that all parties act fairly while the court decides whether and how the action will move forward under the FLSA. See id. at 169–71, 110 S. Ct. at 486.

The district courts' interest in managing collective actions in an orderly fashion is reinforced by Rule 83(b), which allows courts to "regulate their practice in any manner consistent with" federal or local rules. Fed. R. Civ. P. 83(b). "Rule 83 endorses measures to regulate the actions of the parties to a multiparty suit." Hoffmann–La Roche, 493 U.S. at 172, 110 S. Ct. at 487 (citing Gulf Oil, 452 U.S. at 99 n.10, 101 S. Ct. at 2199 n.10). Consistent with Rule 83, "courts traditionally have exercised considerable authority 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " Id. at 172–73, 110 S. Ct. at 487 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630–631, 82 S. Ct. 1386, 1389 (1962)).

The district courts' interest in managing collective actions is also reinforced by Rule 16(b), which requires the court to enter a scheduling order limiting time for various pretrial steps such as joinder of additional parties. Id. at 173, 110 S. Ct. at 487.

18

**C.     Court's Authority to Correct the Effects of Citi Trends's Conduct**

Given the "broad authority" that the district court has to manage parties and counsel in an FLSA collective action, the district court did not abuse its discretion in determining that Citi Trends's conduct in the summer of 2012 undermined the court's authority to manage the collective action.  Nor did the district abuse its discretion in determining that—to correct the effect of Citi Trends's misconduct— it would allow putative collective action members to join the lawsuit notwithstanding their coerced signing of the arbitration agreements.

Whatever right Citi Trends may have had to ask its employees to agree to arbitrate, the district court found that its effort in the summer of 2012 was confusing, misleading, coercive, and clearly designed to thwart unfairly the right of its store managers to make an informed choice as to whether to participate in this FLSA collective action.  Since the arbitration agreements by their terms will directly affect this lawsuit, the district court had authority to prevent abuse and to enter appropriate orders governing the conduct of counsel and the parties.  See Hoffmann–La Roche, 493 U.S. at 171, 110 S. Ct. at 486–87; see also Kleiner, 751 F.2d at 1203 (class action).

The district court simply did what other district courts routinely do:  exercise discretion to correct the effects of pre-certification communications with potential

19

FLSA collective action members after misleading, coercive, or improper communications are made.[11]  See, e.g., Balasanyan v. Nordstrom, Inc., No. 11-CV-2609-JM-WMC, 2012 WL 760566, at *1–2, 4 (S.D. Cal. Mar. 8, 2012) (refusing to enforce individual arbitration agreement in an FLSA action because the defendant's imposition of the agreement was an improper class communication); Williams v. Securitas Sec. Servs. USA, Inc., No. 10-7181, 2011 U.S. Dist. LEXIS 75502, at *8–12 (E.D. Pa. July 13, 2011) (invalidating arbitration agreement imposed on the defendant's employees during pre-certification stage of FLSA litigation and ordering corrective measures because the arbitration agreement was a "confusing and unfair communication" with the potential opt-in plaintiffs); Ojeda-Sanchez v. Bland Farms, 600 F. Supp. 2d 1373, 1379–81 (S.D. Ga. 2009) (granting

---

[11]Courts take similar action when misleading or improper communications are directed at Rule 23 class action plaintiffs.  See, e.g., Kleiner, 751 F.2d at 1201–03 (recognizing district court's authority to police Rule 23 class member contacts and to prohibit the defendant from engaging in unsupervised, unilateral communications with the plaintiff class members to solicit opt-out forms from those class members); O'Connor v. Uber Techs., Inc., No. C-13-3826 EMC, 2013 WL 6407583, *7 (N.D. Cal. Dec. 6, 2013) (invalidating an arbitration agreement imposed before class certification where the imposition of the agreement ran a substantial risk of interfering with the class members' rights under Rule 23); In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 252-54 (S.D.N.Y. 2005), appeal granted, order amended by No. M 21-95, 2005 WL 1871012 (S.D.N.Y. Aug. 9, 2005) (refusing to enforce an arbitration agreement because the agreement was instituted through misleading means after the case was filed and, thus, was an improper communication with putative class members that interfered with the proper administration of the class action); Mevorah v. Wells Fargo Home Mortgage, Inc., No. C 05-1175 MHP, 2005 WL 4813532, at *5-6 (N.D. Cal. Nov. 17, 2005) (ordering various actions, including the cessation of unapproved pre-certification communications with potential class members, to correct any inaccurate impression created by the defendant's misleading and improper pre-certification communications).

20

a limited protective order in FLSA collective action where the defendants engaged in unsupervised, unsolicited, in-person interviews of the plaintiffs in an environment that encouraged speedy and uninformed decision-making); Longcrier v. HL-A Co., 595 F. Supp. 2d 1218, 1229–30 (S.D. Ala. 2008) (striking declarations obtained through the defendants' abusive and misleading communications with prospective opt-in plaintiffs); Jones v. Casey's Gen. Stores, 517 F. Supp. 2d 1080, 1086, 1089 (S.D. Iowa 2007) (limiting the plaintiffs' counsel from affirmatively soliciting potential opt-in plaintiffs to join the FLSA action and requiring counsel to modify their website to provide "only a factual, accurate, and balanced outline of the proceedings"); Maddox v. Knowledge Learning Corp., 499 F. Supp. 2d 1338, 1342–44 (N.D. Ga. 2007) (observing that district courts in § 216(b) actions rely on broad case management discretion by limiting misleading, pre-certification communications and exercising that discretion in the case before the court by ordering the plaintiffs to correct false, unbalanced, and misleading statements on their website); Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 667–70 (E.D. Tex. 2003) (sanctioning the employer and enjoining the employer from communicating ex parte with potential class action members because the employer intentionally attempted to subvert the district court's role in

21

the FLSA collective action by unilaterally sending a misleading and coercive letter to potential plaintiffs that encouraged those persons not to join).

District courts' corrective actions have included refusal to enforce arbitration agreements instituted through improper means and where the timing of the execution of those agreements was similar to the post-filing, pre-certification timing in this case. See, e.g., Balasanyan, 2012 WL 760566, at *1–2; Williams, 2011 U.S. Dist. LEXIS 75502, at *8–12; see also In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d at 252–54 (imposing similar corrective action in Rule 23 class action).

The district court did not abuse its discretion in correcting the effects of Citi Trends's improper behavior in this case. The district court held an initial hearing, after which it denied Citi Trends's motion to compel arbitration. The court then reconsidered its order, held an additional two-day evidentiary hearing, made specific and detailed findings of fact that were supported by the record, and took minimal action to correct the effects of Citi Trends's conduct.

The district court limited its order temporally and substantively. The district court limited its order to those agreements signed under the coercive conditions used by Citi Trends in the summer of 2012. And, the district court limited its order to this particular FLSA action. The court specifically said that it was not ruling on

22

the enforceability of the arbitration agreements as they relate to other cases or controversies.  The district did not restrict Citi Trends from entering into new arbitration agreements with the store managers; nor did the court prevent store managers from electing to comply with the terms of the arbitration agreements that they signed in the summer of 2012.

The district court's limited remedial action is not an abuse of its considerable discretion to manage this collective action.  Accord Kleiner, 751 F.2d at 1203 (holding that a district court's power to manage a class action included the power to prohibit a defendant from making "unsupervised, unilateral communications with the plaintiff class").  That is especially true given the opt-in nature of FLSA collective actions.  Because FLSA plaintiffs must opt-in, unsupervised, unilateral communications with those potential plaintiffs can sabotage the goal of the FLSA's informed consent requirement by planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of "facts."  Because the damage from misstatements could well be irreparable, the district court must be able to exercise its discretion to attempt to correct the effects of such actions.  See Hoffmann–La Roche, 493 U.S. at 170, 110 S. Ct. at 486 (noting that court intervention in the collective action notice process may be necessary).

23

Because we affirm the district court's decision to deny enforceability of the arbitration agreements in this case, we necessarily must affirm the district court's order denying Citi Trends's motion to compel arbitration.[12]

## III.  CONCLUSION

Because the district court did not abuse its discretion in managing the parties' and counsels' conduct in this FLSA collective action, the district court's order denying Citi Trends's motion to compel arbitration is affirmed.[13]

**AFFIRMED**.

---

[12]The district court's "managerial responsibility" rationale for not compelling arbitration did not relate to the substantive validity of the arbitration agreements.  Instead, the district court's "managerial responsibility" rationale addressed, as a procedural matter, whether and how the district court can regulate an employer's attempt to impose an arbitration requirement and waiver of legal rights during the course of a FLSA collective action lawsuit.  Thus, our affirmance of the district court's exercise of its managerial discretion does not require us to determine whether the district court lacked authority to consider issues related to the  arbitration agreements' enforceability or formation.

[13]Because we affirm on this ground, we do not reach the district court's alternative reason for denying Citi Trends's motion to compel arbitration.